**SUPERIOR INSURANCE CO., Appellant,**

v.

**L. F. JACKSON, Appellee.**

No. 15054.

Court of Civil Appeals of Texas.
Dallas.

Feb. 17, 1956.

Rehearing Denied March 16, 1956.

Judgment Reversed June 20, 1956.

150

Gullett & Gullett, Denison, Strasburger, Price, Kelton, Miller & Martin, Hobert Price, Dallas, for appellant.

Slagle, Rollins & Hughes, Sherman, for appellee.

CRAMER, Justice.

This is a workman's compensation case. L. F. Jackson alleged that he sustained compensable injuries in Grayson County while in the course of his employment with Austin Contracting Company whose compensation carrier is appellant here. After hearing the evidence, charge, etc., the jury, on special issues, found in substance that Jackson: (1) Sustained personal injuries on or about September 20, 1953; (2) which resulted from an accident; (2a) which occurred while Jackson was working as an employee of Austin Contracting Company; (3) at a time when he was in the course of his employment with Austin Contracting Company; (4) which naturally resulted in his incapacity to work; (5) which was total; (5a) beginning September 20, 1953, but such disability (6) was temporary and (7) continued for 104 weeks; (8) Jackson also received partial incapacity (8a) beginning September 20, 1953; (9) of 60%; (10) which was permanent; (12) that appellant's failure to pay weekly installments in lump sum would not result in manifest hardship and injuries; (13) that appellant "was physically incapacitated from the date of his injury to file a claim for compensa-

tion"; (14) until December 7, 1953; (15) that Jackson believed at the time he sustained the injury in question that he was an employee of Hollingsworth Construction Company; and (16) such belief prevented him from filing his claim against Austin Contracting Company; (17) that Jackson's said belief constituted good cause for not filing his claim for compensation sooner than it was actually filed. On such verdict, after appellant's motion for judgment notwithstanding the verdict was overruled, and appellee's motion for judgment on the verdict was sustained, a judgment for Jackson was entered for 104 weeks of compensation at $25 per week, and for 297 weeks at $19.80 per week for partial disability. After appellant's duly filed motion for new trial was overruled this appeal was duly perfected, appellant here briefing six points of error.

Points 1 to 3 assert error in overruling its motion for instructed verdict timely presented: (1) When appellee rested; (2) when the evidence was closed; and (3) in overruling appellant's motion for judgment n. o. v.; each because the undisputed evidence showed that appellee received no injuries while in the course of his employment with Austin Contracting Company; but on the contrary, whatever injuries he received were received while off duty and while working at his home, on Sunday afternoon, on his personally owned truck. Appellee counters that there was sufficient evidence to justify, and the court was correct in, submitting special issues 2a and 3.

These points, having been properly raised in trial court, require that we review the evidence to ascertain: (1) If there was any evidence to support the jury's answers to issues 2a and 3; and, if so, (2) whether or not the findings to such issues were so against the preponderance of the evidence as to be manifestly unjust.

The record shows without dispute that the accident occurred on a Sunday afternoon while Jackson, a mechanic, was working on (repairing) a pickup truck owned by him, not by his employer; that he had been employed as a mechanic to repair various items of equipment used by the contractor-employer in constructing a farm-to-market road about five miles long, in Grayson County. Appellee Jackson owned a 1941 pickup truck which he used on the job to carry his tools as well as his employer's jack, extra links for caterpillar tractors, plus various other items used in connection with his employer's work. The employer furnished the oil and gas for the truck, which used less gas than other transport vehicles owned by the employer. Jackson got off from work at Noon on Saturday and on his way home in the truck involved here, the rear axle broke and Jackson was thereafter towed to his home. The next day, Sunday, he was attempting to replace the axle and while under the truck, the jack, which was owned by his employer, slipped, causing the pickup to fall on him, inflicting the injuries made the basis of his present claim for compensation. The employer knew Jackson was using the pickup truck on the job and he did not object to it. He knew that Jackson's use of his own truck saved his heavier truck from making the trip, since it was Jackson's duty to repair equipment that broke down anywhere on the five miles of road being repaired, wherever he happened to be working. The tools necessary for his work weighed too much for him to carry them himself, and his using the pickup truck increased his efficiency as a mechanic over a mechanic who had to walk for five miles. It was to the advantage of the employer "to get the stuff rolling as soon as possible." After the accident one of Hollingsworth's employees came by "and got a bunch of parts off the truck." The record also shows that Jackson testified as to his employment agreement as follows: "The agreement was he said he couldn't pay me nothing for the use of my pickup, but he would pay my oil and gas and keep up my pickup while I was working for him.

"Q. During all the time you were on that road construction company did your boss, whether it was Hollingsworth or the Austin Contracting Company, furnish you oil and gas for your pickup truck? A. Yes, sir."

Also that: "Well, a mechanic, he is supposed to have sockets and everything he needs in the way of repairing automobiles, gasoline engines, and I had a bunch of heavy duty equipment on diesel engines.

"Q. Did you furnish your own hand tools on this job? A. Yeah, I furnished all my hand tools.

"Q. About how much would those hand tools weigh? A. Well, all what I had out there, I imagine—I had five boxes of them. I figure around two thousand pounds, because when you go to stacking that iron together it is pretty heavy.

"Q. Did you have much traveling to do between your repair jobs? A. Yes. Sometimes I would be on one side of the job and something break down and I would go to the,—plumb to the other side of the job.

"Q. How do you tote the tools from one part of the job to the other? A. I had my pickup and I would always go in it.

"Q. Did you carry anything besides yourself and your tools on that pickup truck? A. Yes, I carried his jack, and I don't know,—some people might not know what we call it, but what we call a coffin house, a lot of times we use it to raise up a transmission or something, hang a chain over a high beam. I carried it on there and a big old railroad jack and I carried extra links for his tracks. He had some rails wore out on those caterpillar tractors. I carried extra links for them so we could repair them when they broke down.

"Q. Was that all you carried there? A. I had a bunch of links for maintainers. Just anything we might need. I carried a whole bunch of stuff. I can't recall everything."

Jackson testified that he carried the employer's tools, etc., all the time; his boss told him to carry them; he could not have done his work on Monday if the pickup hadn't been repaired, because he had no other way to haul his employer's tools over to the job.

■ Course or scope of employment in Texas has evoked many trying questions, especially when the principle has been applied to a particular state of facts. 2 Baylor Law Review 95. The three elements involved are the time, the place, and the circumstances under which the injury occurred.

■ At the time of the injury appellee was repairing his own truck at his home, but at that very time the equipment belonging to his employer was in the truck, having been transported from the employer's place of business, and would have to be transported back to his employer's place of business in order that the tools be available on the job next morning. In our opinion, the above record raised an issue for the jury on course of employment at the time of the accident. The work being necessary, and for the benefit of the employer, at the time of the accident (Sunday), the jury's finding on such issue was supported by the evidence and was not against the preponderance of the evidence. Points 1, 2, and 3 are overruled.

Point 4 asserts error in the court's refusal to set aside the jury's answer to issue 3 because it was so against the evidence as to be clearly wrong, the evidence showing that appellee was injured while working on a Sunday afternoon at his own home, on a truck he personally owned. Appellee countered that the evidence was clear and sufficient to raise the issue, and that the jury's answer settled the question. The evidence quoted under points 1 to 3 inclusive, above, shows the work involved was a work of necessity, supports the verdict, and in our opinion the verdict was not against the preponderance of the evidence. Point 4 is overruled.

Point 5 asserts error in the trial court's refusal to grant appellant's motion for mistrial because of improper argument by Jackson's attorney wherein he argued to the jury: "Why didn't the insurance company

up here have a doctor?" The record shows the insurance company had no doctor who examined the plaintiff available as a witness, but that the insurance company had never had the plaintiff examined by a doctor. Appellee countered that the argument compained of was "invited by and in response to argument of counsel for appellant immediately preceding it." The record discloses appellant did not use a doctor as a witness and that the only doctor who did testify was placed on the stand by Jackson. The argument was: "Now, on these questions about total and permanent incapacity, both sides have asked why there was just one doctor, or words to that effect. Well, I'll ask that too. Why didn't this insurance company up here have a doctor?"

The jury was then excluded and appellant moved for mistrial, in substance, because there was no duty on appellant to bring a doctor; it was not shown that appellant had a physical examination made on Jackson, nor that appellant was furnished any medical report, and appellant had no duty to examine appellee; it is not shown that appellant had dominion or control over any doctor who could be called as a witness; that the argument was highly prejudicial and inflammatory, to the extent that it, the insurer, cannot safely go forward with the trial; further that the burden of proof is on Jackson and not on appellant insurer; that such argument was calculated to lead the jury to believe that it was the duty of the insurer to furnish and bring doctors to the courthouse to testify thereon. Jackson's attorney then asserted that the argument was in reply to argument of insurer's attorney. Insurer's attorney then stated in substance that his argument was that Jackson had a family doctor (Dr. Sporer); that his treating doctor was Dr. Enloe; and that he was sent to Dr. Brown by his attorney for purpose of examination and to testify here, and referred to Dr. Brown as a "swearing doctor." Insurer's attorney then stated that he thought the argument was a reasonable deduction from the testimony and did not put any burden on insurer to offer a doctor.

Under the above record, the non-production of available witnesses may be commented upon. 41–B Tex.Jur., Trial of Civil Cases, sec. 251, p. 301, "Failure to Call Witnesses," in the first three sentences, states: "The absence of non-production of witnesses may be commented upon by counsel when it is within the power of the defaulting party to produce them, and when such witnesses are possessed of a knowledge of the transaction inquired about. In commenting counsel may draw unfavorable inferences from the fact. For example in a proper case counsel may call attention to the fact that the adverse party failed to call as a witness a person who is in his employ." Point 5 must be overruled.

Point 6 asserts error in the trial court's permitting appellee Jackson to testify that he had an agreement with Hollingsworth, his first employer, with reference to using his own pickup truck over the objection that it was hearsay as to appellant insurer, such alleged conversation not being binding on Austin Contracting Company, insurer's policy holder. Appellee countered that there was no error in permitting Jackson to testify that he had an agreement with Hollingsworth, his first employer, with reference to his using his own pickup truck over objection that such testimony would be hearsay as to insurer, and that due to the particular relationship between Hollingsworth and Austin Contracting Company, such agreement was binding upon both Austin Contracting Company and its insurer.

The record shows that when Jackson went to work his employer was Hollingsworth Construction Company; that later Austin Contracting Company took over the job from Hollingsworth, but that Jackson's duties continued and were the same under both Hollingsworth and Austin, and that the only notice Jackson had as to a difference in his employers was when he received his pay checks. They were from Austin Contracting Company instead of Hollingsworth, and they continued that way until the injury.

The above, together with the record as a whole, shows that Austin Contracting

Company checks were paid to Jackson after the time it took over the work from Hollingsworth and that appellant insurer was the insurer for Austin Contracting Company at the time of the accident. The employee Jackson was not consulted with reference to the matter. We are therefore of the opinion there was no reversible error in the showing of the nature of his employment and the employment agreement with Hollingsworth and the continuance of that agreement after Austin Contracting Company took it over. Point 6 is overruled.

Finding no reversible error in the trial court's judgment it is

Affirmed.