## DEDEAR et al. v. JAMES.

### No. 9460.

Court of Civil Appeals of Texas. Austin.
Nov. 8, 1944.

Rehearing Denied Nov. 29, 1944.

E. M. Grimes, of Taylor, for appellants.

Strausburger, Price, Holland, Kelton, & Miller, of Dallas, for appellee.

BLAIR, Justice.

Appellants, Albert Dedear and Leonard Dedear, sued appellee, M. F. James, for damages to Albert Dedear's automobile and for damages to Leonard Dedear for personal injuries received when the automobile, which he was driving at the time, collided with a truck belonging to appellee. Lloyds Agency intervened, alleging that it had paid to Albert Dedear $150 as collision insurance damages to his automobile, and prayed for the recovery of the first $150 of any damages to the automobile that might be awarded to Albert Dedear. A jury trial on special issues resulted in a verdict and judgment for appellee; hence this appeal.

Our opinion on a former appeal of this case, 172 S.W.2d 535, states the circumstances under which the collision occurred early in the afternoon, on the paved portion of Highway 71, near the Village of Plum. The highway ran west to east. The truck approached the highway from the north, stopped at the paved portion, and then pro-

ceeded at a slight angle straight across the highway. The automobile approached from the west, and immediately prior to the collision the driver swerved it sharply to the right, avoiding running head on into the truck, but hitting the truck near the front end so as to jam the vehicles together, and as so jammed together the vehicles proceeded in a southerly direction off the road and stopped astride the drainage ditch of the road.

The two grounds of negligence relied upon for recovery were: (1) Failure of the truck driver to keep a proper lookout for the approaching automobile; and (2) failure of the truck driver to yield the right of way to the approaching automobile. The first ground of recovery was submitted under a group of three issues. The jury found that the truck driver failed to keep a proper lookout, but that such failure was not negligence; and did not answer the third issue of proximate cause under the court's instructions to answer that issue only in the event it answered the preceeding negligence issue "Yes." Another group of three issues similarly submitted the ground of failure to yield the right of way to the automobile. The jury found that the truck driver failed to yield the right of way to the automobile, but that such failure was not negligence, and did not answer the proximate cause issue under the court's instruction to answer that issue only in the event it answered the negligence issue "Yes." Upon these findings the trial court rendered judgment for appellee.

By Point 1 appellants contend that the court erred in not rendering judgment for them upon the jury finding that the truck driver failed to keep a proper lookout for the approaching automobile and upon the undisputed evidence showing that such failure was negligence and a proximate cause of the collision; and in any event the judgment should be set aside, because the great weight and overwhelming preponderance of the evidence showed that the failure to keep such proper lookout was negligence and was a proximate cause of the collision. By Point 2 like contentions are made with respect to the failure of the truck driver to yield the right of way to the approaching automobile. These two points are discussed together in appellants' brief. Neither contention is sustained.

The collision occurred where a road running north to south crossed State Highway 71, which runs west to east, and is a main public highway. The time of the accident was early afternoon in August 1941, and "it was cloudy and dry and hot that day." The truck came from Legler's refreshment stand near the highway to within a few feet of the highway where it stopped, and then started south across the highway at from 8 to 20 miles per hour, according to the estimates of the witnesses. The truck driver and several witnesses testified after he stopped he looked first to the right and then to the left, and he testified that he did not see the automobile approaching, and that he then proceeded to cross the highway; and that he did not see the automobile until he heard it hit the truck.

Appellant Leonard Dedear, the driver of the automobile, testified that when he was about 200 yards away he saw the truck parked in front of Legler's stand; that it then started out going rather slowly up to the paved portion of the highway where it stopped; that before it stopped he sounded the horn of the automobile when about 50 or 60 yards from the truck and thought it had stopped to let him pass; that the truck then picked up speed and started across the highway, and that "anyone with normal vision could see there would be a collision"; that after the truck stopped he speeded the automobile to from 45 to 50 miles per hour, thinking it had stopped to let him pass; that immediately before the collision he swerved to the right so that there was not a head-on collision, but more of a "jamming together of both of the cars"; and that the "front parts hit first, and when they did, it swung both around and both just struck together; in fact, the inside wheels of both cars were off the ground straddling the ditch," when they stopped.

The collision occurred after the truck passed the center of the 30-foot paved portion of the highway, but before it was off of the paved right-hand side from the direction the automobile was approaching.

A traveling companion of Leonard Dedear testified that at the place where the collision occurred, "there is a road coming from Legler's stand to the highway, and one going from the highway to Bertsch's filling station" across and just south of the highway; that the truck stopped with its front wheels about the edge of the paved portion of the highway; that when it started up again it was traveling about 15 or 20 miles per hour, at which time the automobile was from 20 to 30 feet away, and was traveling at about 45 to 50 miles per hour, or, accord-

ing to the witness, about three times as fast as the truck; that the front end of the truck would have had to travel 18 or slightly more feet to the point of the collision, while the automobile traveling three times as fast would have had to travel from 20 to 30 feet. When again placed on the witness stand the witness stated that the speed and distance testified to were estimates; that he had been making "calculations of it," and as follows:

"Q. It don't work out, does it? A. No, sir, it sure don't."

A witness testified that she saw the truck and saw the automobile approaching "very fast," and turned away to avoid seeing the collision. Other witnesses who saw the collision testified that the automobile was traveling at from 45 to 60 miles per hour or faster. Appellant admitted that he was traveling at from 45 to 50 miles per hour; and that "everything looked like it was moving fast then. If you ever go through that, you will know the impression of it."

Witness Bertsch testified that he was walking to the front of his store when the accident happened, but did not see it; that he immediately went to the scene of the collision, and could tell from marks on the pavement that it occurred about 8 or 10 feet from the edge of the pavement; that the skid marks of the tires "of the car" went about 50 or 60 feet down the road from the point of the collision.

The truck driver testified that when he drove up to the pavement and stopped the truck was not exactly square with it, but that "it was a little angling across there" to Bertsch's station; and that when he started again he continued at the same angle straight across the highway. He further testified that from where he stopped the truck he could see down the highway some 250 yards in the direction the automobile was approaching; that he never saw the automobile until it hit the truck, at which time he did not know if all wheels of the truck were off the paved portion of the highway, but did know that the front wheels were off the pavement at that time.

The foregoing facts sustain the jury finding that while the truck driver failed to keep a proper lookout and failed to yield the right of way to the approaching automobile, that neither of such acts was negligence. The settled rule is that negligence is generally a question of fact for the jury to determine.

The foregoing facts show no material dispute as to the facts and circumstances under which the collision happened. The truck was driven slowly up to the paved portion of the highway, stopped, the driver looked to the right and left, and then proceeded at a slight angle straight across the highway at the rate of from 8 to 10 miles per hour. He testified that he could see some 250 yards in the direction the automobile approached, but that he did not see it until it hit the truck. The traveling companion of Dedear estimated the rate of speed of the truck at from 15 to 20 miles per hour, but later admitted that his calculations based on that speed and the position and speed of the automobile immediately before the collision would not work out. Dedear, the driver of the automobile, saw the truck when he was about 200 yards away, saw it slowly approach the paved road and stop after he sounded the horn when about 50 or 60 yards away, and he then speeded the automobile up to 45 or 50 miles per hour, thinking the truck had stopped to let him pass. Under these facts the jury could find that although the truck driver did not keep a proper lookout, or did not yield the right of way to the automobile approaching from the right, that neither such act nor failure to act was negligence. It could have found that if the truck driver had seen the approaching automobile at the time he started the truck across the highway, it was at such distance away that in the exercise of ordinary care he could have crossed in front of it, and in consequence the act of crossing the highway at the time was not negligence. The jury could also have found that if the truck driver had seen the approaching automobile at the time he started the truck across the highway, and if at that time it was so far away that no apparent danger was involved in attempting to cross the highway, he could have proceeded to cross the highway under the rule announced by the decisions construing Article 801(E), Penal Code, requiring the operator of a motor vehicle approaching an intersection to yield the right of way to a vehicle approaching the intersection from the right. This rule is concisely stated in Roddy v. Herren, Tex.Civ.App., 125 S.W.2d 1057, 1060, as follows:

"A driver of an automobile approaching a street intersection, finding no one approaching from the right within such distance as to reasonably indicate danger of collision, may proceed."

See also Pure Oil Co. v. Crabb, Tex.Civ. App., 151 S.W.2d 962; Lewis v. Martin, Tex.Civ.App. 120 S.W.2d 910, and the numerous cases cited by these authorities.

■ If, however, negligence had been established with respect to both or either of the grounds of recovery relied upon, still appellants could not recover, because there was no jury finding that such negligence was a proximate cause of the collision. Proximate cause was not established as a matter of law with respect to either of the alleged acts of negligence. And under the foregoing facts the jury could have found, if it had been called upon to do so, that something other than the character of lookout kept by the truck driver, or his failure to yield the right of way to the automobile approaching from the right was the proximate cause of the collision. It could have concluded that the speeding up of the automobile after the horn sounded and the truck stopped, in the belief that it had stopped to let the automobile pass, was a proximate cause of the accident, even though such act was not negligence on the part of the driver of the automobile. The jury could have also concluded that the failure to yield the right of way to the truck, which had reached the pavement when the automobile was under the undisputed evidence from 50 to 60 yards away, was a proximate cause of the collision, although the driver of the automobile may have been laboring under the mistaken belief that the truck had stopped to permit him to pass, or although he was not negligent in proceeding under such circumstances. In fact, the jury found in answer to the issues submitting the contributory negligence of the driver of the automobile in failing to yield the right of way to the truck, which had reached the crossing place when the automobile was 50 or 60 yards away, that he failed to yield the right of way to the truck, but that such failure was not negligence, and did not answer the issue of proximate cause under the court's instruction not to do so unless it had answered the preceding negligence issue "Yes." Not only were appellants required to establish, either as a matter of law or to the satisfaction of the jury, that either one or both the grounds of recovery relied upon was negligence, but were also required to show that such negligence was a proximate cause of the collision. Appellants failed to establish either negligence or proximate cause as to either ground of recovery relied upon, and in consequence are not entitled to the damages the jury found they suffered as the result of the collision.

■■ By Point 3 appellants contend that the court erred in submitting the issue of unavoidable accident, because not raised by the evidence. The jury found that the collision was the result of an unavoidable accident. No injury is shown to have resulted from the mere submission of the issue, because our foregoing findings and conclusions that the evidence supports the jury's findings that neither act nor ground relied upon by appellants for recovery was negligence, established the nonliability of appellee for the damages resulting to appellants from the collision. If the finding of unavoidable accident were necessary to sustain the judgment in favor of appellee, we think the evidence is sufficient to support such finding. The jury could have and apparently did take the view that at the time the truck driver started the truck across the highway, the automobile was so far away that no apparent danger existed, and that he was therefore not negligent in attempting to cross the highway. The jury could also have taken the view that the failure of the driver of the automobile to yield the right of way to the truck, which reached the highway and stopped when the automobile was 50 or 60 yards away, was not due to any negligence, but to the mistaken belief of the driver of the automobile that the truck had stopped to let him pass. Having so concluded that neither party was guilty of negligence in the premises, the jury could have found that the collision was the result of an unavoidable accident.

By Point 4 appellants contend that the jury finding that the failure of the truck driver to keep a proper lookout for the approaching automobile was not negligence, is against the great weight and overwhelming preponderance of the evidence. Our foregoing findings and conclusions render unnecessary a discussion of this point.

By Points 5 and 6 appellants contend that the jury's answer finding that the truck driver failed to keep a proper lookout for the approaching automobile, and its answer finding that such failure was not negligence, present an irreconcilable conflict. This contention is overruled upon our foregoing findings and conclusions that although the jury found that the truck driver failed to keep a proper lookout, that the evidence sufficiently supported its further finding that such failure was not negligence.

By Point 7 appellants contend that the court erred in refusing to include in its definition of "proper lookout" the time when such proper lookout should be kept. The instruction specifically told the jury that the lookout should be at the time of entering and crossing the street or highway, so as to avoid being struck by the approaching vehicle; and the contention is without merit.

The judgment of the trial court is affirmed.

Affirmed.