W. C. COUCH et al., Appellants,

v.

Gladys Gurley HALE, Appellee.

No. 198.

Court of Civil Appeals of Texas.

Corpus Christi.

June 16, 1966.

Kleberg, Mobley, Lockett & Weil, by Leslie S. Lockett, Corpus Christi, for appellants.

Branscomb, Gary, Thomasson & Hall, by Richard Hall, Fischer, Wood, Burney & Nesbitt, by James R. Harris, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This is a personal injury suit brought by Gladys Gurley Hale as a result of an intersectional collision in Aransas Pass, Texas. Essentially, there are three parties to this suit. Mrs. Hale, hereafter called appellee, was a passenger in a taxicab driven

by L. E. Bailey and owned by W. C. Couch, hereafter referred to as appellants. The other car was owned by F. E. Brown, Jr., and driven by his father, F. E. Brown, Sr., hereinafter referred to as defendant Brown.

The accident giving rise to this suit occurred at approximately 1:00 o'clock in the morning. Mrs. Hale was a waitress in a cafe and had finished her work and was en route home when the accident happened. She entered the cab and sat on the right hand side of the front seat. Appellant Bailey proceeded east on Greenwood Street to its intersection with Arch Street where the accident happened. Both cars were approximately in the center of the intersection at the point of impact. The evidence showed that the point of impact on appellant Bailey's taxi was at or near the right front wheel and the point of impact on defendant Brown's vehicle was approximately at the left front portion of his car. There was a stop sign on Arch Street facing defendant Brown's vehicle as he approached the intersection heading north. The court, in a preliminary summary judgment proceeding, held that the stop sign had been illegally erected and maintained and that the failure of defendant Brown to stop would not be negligence per se. On the southwest corner of the intersection there was a warehouse building sitting on pilings partially blocking the view of both drivers as they approached the intersection. The building was seventeen and one half feet from Arch Street and twenty feet from Greenwood Street. The character of Greenwood Street, the one on which the taxi was proceeding, changes from pavement to one of gravel immediately on the other side of the intersection with Arch Street.

The case was tried to a jury and in response to thirty-three special issues, judgment was entered for appellee Hale and against appellant Bailey, appellant Couch and defendant F. E. Brown, Sr. It was undisputed that Bailey was operating in the course and scope of his employment as a taxi driver for the owner, appellant Couch. In addition to this suit of Mrs. Hale, appel-lant Bailey filed a cross-action against defendant Brown for his personal injuries. Because of this cross-action against defendant Brown, and because Bailey was operating a common carrier and was therefore obligated to exercise a high degree of care as to appellee Hale, issues concerning negligence of Bailey were submitted, both as to ordinary care and as to high degree of care.

The jury found from a preponderance of the evidence that immediately before the collision in question, Lee Bailey failed to keep such a lookout as would have been kept by a person exercising a high degree of care, and that this was a proximate cause of the collision in question. The jury found that Bailey failed to make such application of the brakes of his taxi as would have been made by a person exercising a high degree of care and that this was a proximate cause of the collision. Special issue 7 inquired as to which driver should have yielded the right-of-way at the time and on the occasion in question. The jury answered "Bailey"; that Bailey's failure to yield the right-of-way was negligence and a proximate cause. Each of these issues as to lookout, brakes and failure to yield the right-of-way were separately submitted on high degree of care and ordinary care and all of them were found against Bailey. The jury found further that defendant Brown failed to keep a proper lookout, which was a proximate cause; did not stop his vehicle before entering the intersection; and that was negligence and a proximate cause. Both drivers were acquitted as to excessive speed.

Appellants' points one and two complain of the trial court judgment against them because there was no evidence or there was insufficient evidence that Bailey did not keep a proper lookout, whether this be a high degree of care or ordinary care. Appellants' points three and four concern no evidence and insufficient evidence that Bailey did not make a proper brake application, whether this be ordinary care or high degree of care. Point five was that there was no evidence that Bailey failed to yield

the right-of-way or that this was a proximate cause of the collision, and point 6 that there was insufficient evidence in this regard.

The trial court instructed the jury that the term "ordinary care" as used in the charge is meant such care as a person of ordinary prudence would have used under the same or similar circumstances. The court further instructed the jury that Bailey, as a carrier of passengers, was under a duty to appellee Hale to exercise such a high degree of foresight as to possible dangers and such a high degree of prudence in guarding against them as would have been used by a very cautious, prudent and competent person under the same or similar circumstances. Continuing, the court said: "You are instructed that the term 'high degree of care' as used in the following special issues refers to this high degree of foresight and prudence as hereinabove defined." There was no objection made to this special instruction by the trial court.

■ In considering the "no evidence points" the record must be viewed in the light most favorably in support of the judgment of the trial court and the jury verdict. In this regard this court in considering the sufficiency of the evidence, (under the no evidence point) must disregard all evidence adverse to the findings of the jury and consider only the evidence favorable to such findings, indulging every legitimate conclusion which tends to uphold them. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; Fisher Construction Company v. Riggs, 160 Tex. 23, 325 S.W.2d 126 (1959). The jury is not only the judge of the facts and circumstances proven, but may also draw reasonable inference and deductions from the evidence adduced before it. Its findings may not be disregarded if the record discloses any evidence of probative value which, with inference that may be properly drawn therefrom, will reasonably support the same. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958). The Court of Civil Appeals is without authority to disregard the jury's findings to special issues where there is some evidence in the record to support the findings. Singer v. Singer, 150 Tex. 115, 237 S.W.2d 600, (Supreme Court 1951). Insofar as there may be conflict in the testimony of the witnesses it is clear that the jury, in the exercise of its prerogative, is the sole judge of the facts proven, of the credibility of the witnesses and the weight to be given their testimony. It is well settled that any ultimate issues may be established by circumstantial as well as direct evidence. Lynch v. Ricketts, supra; English v. Miller, Tex. Civ.App., 43 S.W.2d 642, wr. ref. With these principles in mind we will review the "no evidence points" concerning the failure of Bailey, in operating the taxi, to keep such a lookout as would have been kept by a person exercising that high degree of care as defined by the court.

■ The evidence was undisputed that appellant Bailey usually drove his taxi at a speed of twenty to twenty-five miles per hour and that he was going down Greenwood at approximately this speed. In his deposition he originally testified that he did not slow down at the intersection before the accident. However, he changed his deposition some sixteen times generally to "I don't remember" answers. There was evidence that Bailey had suffered some degree of loss of memory. Throughout the trial his answers for the most part were to the effect that he could not remember or that he did not recall. Most of his evidence was negative in character.

Defendant Brown testified that the taxi was travelling partially on the wrong side of the road or a little over the center strip, and that he saw the taxi just before the impact; that there was no indication that the cab was turning to its left, but on the contrary was heading straight down Greenwood. He testified that at the stop sign he either stopped or came to a speed of less than one mile per hour and then travelled some fifteen or twenty feet to the center of the intersection where the point of im-

pact occurred, reaching a maximum speed of around ten miles per hour. He estimated that it was five seconds after he left the stop sign to the point where the accident occurred. He testified that the operator of each car could have seen the other for a half a block and that he either entered the intersection before the taxi, or that they reached the middle of the intersection at approximately the same time. Defendant Brown's son corroborated this testimony to the extent that the accident occurred five to ten seconds after the car had decelerated at the stop sign.

The investigating police officer testified that there was no physical evidence that the taxi had turned to the left to take evasive action; that there were no skid marks except those caused by the impact. He further testified that the building which partially blocked the view of both drivers was off the ground some three or four feet on pilings and that a driver approaching from either side could see the surface of the other road underneath the building. He testified that a person stopping at the stop sign would be able to see clearly for a considerable distance west toward the approaching taxi and that a person in the approaching taxi could see the vehicle nearing the intersection. He testified that it is a well known fact that between the hours of one and three o'clock in the morning, cars are more likely to slow down rather than stop at stop signs in Aransas Pass. Appellant Bailey confirmed this. There was other evidence, such as the fact that Bailey's vehicle continued for seventy feet after the impact and Brown's vehicle twenty feet and that both cars were damaged very extensively. The jury was entitled to conclude from all of this evidence that the cars, being visible to one another for a time, either or both drivers could have seen each other in time to have taken evasive action. There was no evidence that Bailey took any such action.

Flanagan, the expert witness, testified that at twenty miles per hour the taxi could have stopped at a distance of twenty to twenty-two feet excluding reaction time. Based upon his estimate that defendant Brown's vehicle was going fifteen miles per hour at the point of impact, and based upon the testimony that Brown had nearly stopped at the stop sign, his average speed from that point over a distance of thirty-one feet to the point of impact, would have placed the taxicab ninety feet away. At twenty miles per hour the taxi was travelling twenty-nine feet per second. Allowing one second for reaction time, appellant Bailey had sixty feet within which to bring his taxicab to a stop. The jury could have properly concluded that if appellant Bailey had been exercising that high degree of care required under the circumstances, by keeping a proper lookout, then the accident would not have happened.

One of the issues that developed from the evidence was whether or not appellee Hale had detracted appellant Bailey sufficiently to have been a proximate cause of the collision. There was testimony to the effect that she handed him two quarters (the fare); that he reached out and accepted the money with his right hand and placed it in his pocket. There was evidence that this occurred within the block preceding the collision. The jury found that this action on the part of appellee Hale distracted Bailey immediately prior to the accident. However, her acts were not a proximate cause of the accident. It may have been a reasonable deduction on behalf of the jury that Bailey was not exercising that high degree of care at the time he accepted the fare and was detracted. This could have been a circumstance that caused his failure to keep a proper lookout. Although appellant Bailey contends that none of his admissions in his deposition or his testimony at the trial are to be given any weight because of his partial loss of memory, we believe that this was up to the jury to decide. Bailey admitted that he did not hear any brakes screech prior to the collision. At one point in his testimony where he described the building to his right at the corner of Arch and Greenwood, he was

asked the question as to whether or not he could have seen car lights on the road at night time coming along Arch Street. Bailey stated: "You might, if that street light was not there where it would light the street up where it didn't make a whole lot of difference." Then, after testifying as to how close the building was to the street, he was asked the question: "So up to that point as you drive along Greenwood up to the intersection of Arch Street you are just sort of *flying blind*, are you not?" Answer: "yes, sir." (emphasis supplied) At another place in the testimony, Bailey was asked: "Q. All right, sir. And you were awar*d* on this night as you approached the intersection of Arch and Greenwood Streets that you had this building on your right that prevented you from seeing vehicles approaching on Arch. Is that correct? A. Yes, sir." This would warrant the jury's belief that Bailey knew that this was a blind intersection and would require a proper lookout to be maintained in the direction of the blind corner. As to speed, he was then asked the question: "To the best of your recollection then you proceeded on at the same rate of speed?" He answered: "Yes, I might have slowed after I got through the intersection if I hadn't got hit because it was pretty rough (road surface) on the other side of the intersection."

If the jury chose to believe that defendant Brown slowed or nearly stopped at the intersection, and then took five to ten seconds to drive from that point, to the point of impact, the Brown vehicle would have been visible for this same length of time to a person approaching the intersection, if he was keeping a proper lookout.

Finally, at another place in the testimony, we quote Bailey:

"Q. Now, Mr. Bailey, how far were you from the intersection when you first saw the Brown automobile?

A. I don't remember seeing it.

Q. Did you ever see it?

A. No."

We believe the jury would be warranted in finding that defendant Bailey failed to keep that proper lookout as was required of him. Appellants' point one is overruled.

■ Concerning appellants' fifth point the same rules are applicable. The intersection in question was technically uncontrolled because of the illegally erected and maintained stop sign. Art. 6701d, Sec. 71, Vernon's Ann.Civ.St., states that: " * * * [t]he driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different highway." (entering first)

"When two vehicles enter the intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right." Reconstruction of the evidence as appellee contends, it shows that the point of impact was approximately in the center of the intersection. The expert witness testified that based on his calculations, Brown's average speed was seven and one-half miles per hour from the stop sign to impact point; and that when Brown left the stop sign the cab was ninety feet from the intersection. The evidence shows that Greenwood was thirty-seven feet wide and Arch Street twenty-seven feet. Brown's vehicle had to travel eighteen and one-half feet to reach the middle of the intersection, while the taxicab had to travel thirteen and one-half feet to reach the same point. Viewing the evidence favorable to the jury finding, the taxicab was travelling at a higher rate of speed than the Brown vehicle; therefore, it would be obvious that it would require a longer period of time for Brown to traverse the greater distance at a lesser speed. This would place Brown into the intersection first, or at least entering the intersection at approximately the same time. Accepting as true this evidence, it would support the

jury's findings that Bailey failed to yield the right-of-way to Brown. Appellants' point five is overruled.

▉▉▉ Appellants' points two and six concern the insufficiency of the evidence as to lookout and right-of-way. This requires the court of civil appeals to balance substantial evidence that supports the verdict, against substantial evidence that is against the verdict as to whether the great weight and preponderance of the evidence favors, or is against the verdict. Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933 (Supreme Court 1958). After considering all the evidence, we conclude appellants' points are not well taken. Fisher Construction Company v. Riggs, supra. Points 2 and 6 are overruled.

Appellants' seventh point complains of the judgment of the trial court because the findings of the jury that Brown ran the stop sign which was negligence and a proximate cause of the collision are in irreconcilable conflict with all of the jury's findings which are adverse to appellants. Appellee argues that although the jury found that defendant Brown disregarded this illegally erected stop sign, this did not constitute a violation of the law so as to be negligence per se, but only permitted a finding of ordinary negligence against him. Appellants argue that vehicles are accustomed to stopping and obeying stop signs and appellant Bailey was entitled to rely on this whether they are illegally placed or not. However, there was testimony that Bailey himself knew that late at night many people did not altogether stop at stop signs.

▉▉▉ In a case involving a vehicle and a pedestrian and the failure of the pedestrian to keep a proper lookout, judgment for the driver of the vehicle was affirmed. Plata v. Gohman, 359 S.W.2d 163, Tex.Civ.App., 1962, ref. n. r. e. The Court said:

"* * * Intersection cases are not precisely in point, but they suggest similar rules and results with respect to the facts and circumstances which must be considered. The principle is the same. Even one who has the right of way is not excused from exercising ordinary care for his own safety. Even though one is not required to anticipate negligent conduct, he is not entitled to close his eyes to that which is plainly visible and which would have been observed by a person of ordinary prudence similarly situated. Lynch v. Ricketts, 158 Tex. 487, 314 S.W. 2d 273; De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95; Intges v. Dunn, Tex. Civ.App., 311 S.W.2d 877; Lofland v. Jackson, Tex.Civ.App., 237 S.W.2d 785; Norris Bros. v. Mattinson, Tex.Civ.App., 145 S.W.2d 204; Lewis v. Martin, Tex. Civ.App., 120 S.W.2d 910."

We hold that even with the negligent act of defendant Brown in failing to stop, which was a proximate cause of the collision, this act did not excuse the negligent conduct on the part of appellant Bailey. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (Supreme Court 1955); McWilliams v. Muse, 157 Tex. 109, 300 S.W.2d 643 (Supreme Court 1957); Skyline Cab Co. v. Bradley, 325 S.W.2d 176, Tex.Civ.App.1959, ref. n. r. e.; El Paso City Lines, Inc. v. Dudney, 280 S.W.2d 303, Tex.Civ.App.1955, ref. n. r. e. As was said by Justice Walker of the Supreme Court:

"If the driver who is under statutory duty to yield the right-of-way fails to do so, the exercise of ordinary care may require the operator of the other vehicle to yield."

McWilliams v. Muse, supra. Appellants' seventh point is overruled. Appellants' points 3, 4, 8, and 9 concern no evidence, insufficient evidence, and the manner of submission of the special issues concerning brakes. Because of the disposition we have made of this case, it is not necessary to discuss these points. The jury found that appellant Bailey was negligent on two other

independent grounds. The submission of the issues concerning brakes, even if they were in error, do not amount to reversible error of this judgment. Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806 (1958); Prasek v. Dudley, 395 S.W.2d 876 (1965), Tex.Civ.App., ref. n. r. e; Whited v. Powell, 155 Tex. 210, 285 S.W.2d 364 (Supreme Court 1956); Dedear v. James, 184 S.W.2d 319, Tex.Civ.App. (1944), wr. ref.; Panhandle & Santa Fe Ry. Co. v. Walker, 364 S.W.2d 433, Tex.Civ.App. (1963), n. r. e.; Missouri Pac. Railroad Co. v. Sims, 350 S.W.2d 405, Tex.Civ.App. (1961), n. r. e.

In view of the disposition of this case, the position of appellee Brown in this court is immaterial. The motions filed by the other parties to strike his briefs are therefore dismissed.

Judgment of the trial court is affirmed.