**SAM KANE, INC., Appellant,**

v.

**Edward MATHISEN, Appellee.**

**No. 797.**

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 24, 1974.

Rehearing Denied Feb. 14, 1974.

Gary Norton, Branscomb, Gary, Thomasson & Hall, Corpus Christi, for appellant.

Hubert L. Stone, Jr., Stone, Luther & Dyer, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

This is a rear-end collision case. Edward Mathisen sued Sam Kane, Inc., to recover for personal injuries and for automobile damages. In answer to special issues, the jury found that Gary Kulp, defendant's employee, failed to maintain "an assured clear distance" between his vehicle and the vehicle driven by the plaintiff and failed to keep a proper lookout and that each of his failures was a proximate cause of the collision. As a result of the jury verdict, the trial court entered judgment for the plaintiff in the sum of $22,470.00. The defendant has appealed this judgment.

The defendant's appeal is predicated on his complaints that the jury's finding of $10,000.00 for loss of earning capacity in the future is not supported by the evidence and that the trial court, over objections, improperly submitted to the jury a special issue asking whether Gary Kulp failed to maintain an "assured clear distance."

In the afternoon of September 10, 1971, the plaintiff was stopped in his pickup truck on Ayers Street preparing to make a

left turn on Sunny Brook Street, an intersecting street, in Corpus Christi, Texas. While so stopped the plaintiff's truck was struck from the rear by a larger truck driven by the defendant's employee, Gary Kulp. The next morning, September 11, 1971, the plaintiff went to his family doctor, Dr. Thomas York, complaining about head, neck and back pains. Dr. York thereupon hospitalized the plaintiff for treatment from September 11 through September 25, 1971. Thereafter, the doctor continued to treat the plaintiff as an outpatient through December 14, 1971, and during such period the doctor prescribed for the plaintiff conservative treatment: traction at home, massage, heat, and pain pills. October 27, 1972, (four days before the trial) was the next time the doctor saw the plaintiff and at that time, after an examination, the doctor concluded that plaintiff's condition would not further improve without surgery to perform an anterior cervical fusion of some of the vertebrae in the plaintiff's neck. Dr. York has recommended this corrective surgery to Mr. Mathisen.

At the time of trial the plaintiff was 55 years old. Prior to the accident in question, he had sustained four separate lower back injuries resulting in two lower back operations. When he first injured his back, in 1959, surgery was required to treat that injury. After this surgery in 1959, because of physical disability, he was unable to continue his work as a machinist. The plaintiff then started operating pleasure fishing boats. His last lower back injury and surgery prior to the subject accident occurred in 1966. After that injury and surgery, Mathisen was able to return to his work of operating boats, which work he did until the time of the injury, September 10, 1971, made the basis of this suit. His earnings have averaged approximately $2,400.00 per year from his own efforts as a boat operator. A partnership with his wife involving fishing equipment rentals and concessions aboard boats returned to them a yearly income of approximately $600.00 How much of this partnership income could be attributed to the labor of him, or to his wife, the plaintiff did not know.

■ In its first point of error, the defendant-appellant asserts that the trial court erred in failing to disregard the jury finding in answer to special issue no. 20d on the grounds that there is no legally probative evidence to support the jury finding of $10,000.00 loss of earning capacity in reasonable probability in the future. The question of "no evidence" is one of law, and our review requires us to consider only the evidence and inferences favorable to the questioned jury finding and to disregard all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.Sup.1965); Lopez v. Lone Star Beer, Inc. of Corpus Christi, 465 S.W.2d 774, 780 (Tex.Civ.App.—Corpus Christi 1971, n. r. e.).

Dr. York, whose testimony is the only medical testimony in the record, was of the opinion that the plaintiff's neck problems were caused by the collision in question; that the plaintiff was totally disabled to do the work he was doing before the collision; and that this disability is a permanent one in the absence of surgical intervention. Further, the doctor was of the opinion that if the plaintiff could "learn to live with this" (pain and other symptoms that he was having with reference to his injuries), he should not have the suggested surgery. The reason given by the doctor for the plaintiff's foregoing surgery was that he had an arthritic condition in the area of his neck where the fusion would have to be done. The arthritic condition could cause complications and surgery might not benefit the plaintiff.

As heretofore pointed out, from the plaintiff's testimony we learn that his earnings before the collision in question were approximately $2,400.00 per year. Mortality tables introduced into evidence show that a person 55 years old (plaintiff's age at the time of trial) has a life expectancy of 17.78 to 22 years. In summary, the total disability of the plaintiff as a re-

sult of the collision; the probability of the plaintiff's learning "to live" with his condition and therefore not submitting to the risk of surgery on his neck; the amount of the plaintiff's earnings before the neck injury; and his life expectancy all comprise some evidence on which the jury was entitled to predicate a finding of $10,000.00 for loss of earning capacity in reasonable probability in the future. We so hold. Appellant's first point, a "no evidence" point, is overruled.

■ We now consider appellant's second point in which the complaint is made that the trial court erred in failing to disregard the jury finding in answer to special issue no. 20d because the evidence is factually insufficient to support the jury finding of loss of earning capacity in reasonable probability in the future. When a contention is made that a finding should be disregarded because of the insufficiency of the evidence, such contention is a "no evidence" point. Garza v. Alviar, supra, 395 S.W.2d at page 824. And we have heretofore overruled the appellant's "no evidence" point. However, if the appellant is urging that the evidence is too weak to support the jury finding, we hold that the evidence summarized above is enough to sustain the jury finding in question. See Calvert, "No Evidence" and "Insufficient Evidence," Points of Error, 38 Texas L.Rev. 361, 366 and 372 (1960). Appellant's second point is overruled.

■ In its third point, the appellant contends that the trial court erred in failing to disregard the jury finding in answer to special issue no. 20d on the ground that the jury finding is contrary to the greater weight and overwhelming preponderance of the evidence. This point requires us to consider and weigh all the evidence presented by the record, including evidence which tends to prove the existence of vital facts as well as evidence which tends to disprove their existence. If a jury's finding, considering all of the evidence of probative value, is

so contrary to the weight and preponderance of the evidence as to be clearly wrong and unjust, we should sustain the point and reverse the judgment of the trial court and remand the case for a new trial. Otherwise, this court should overrule the point and affirm such judgment. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951); Southern Pacific Company v. Stanley, 473 S.W.2d 52 (Tex.Civ.App.— Corpus Christi 1971, n. r. e.). We are required to balance substantial evidence that supports the fact finding against substantial evidence that is against the finding, and thereby determine whether the great weight and preponderance of the evidence is in favor of or against such finding. Gulf, Colorado & Santa Fe Railway Company v. Deen, 158 Tex. 466, 312 S.W.2d 933 (1958); Gonzalez v. Layton, 429 S.W. 2d 215 (Tex.Civ.App.—Corpus Christi 1968, n. w. h.).

■ In that regard, we first consider the evidence that is against the finding of the appellee's loss of earning capacity in the future in the amount of $10,000.00, as contended by the appellant. Dr. York, at one point in his testimony, did say that after surgery to fuse the vertebrae in Mathisen's neck, Mathisen (plaintiff-appellee) would in reasonable medical probability be able to return to work doing the same kind of work that he was doing, before the date of the collision, within four to six months after surgery. From this the appellant reasons that if plaintiff's annual earning capacity of approximately $2,400.00 is multiplied by the maximum duration of his disability to work of six months, or one-half year, (after corrective surgery) the result would be a maximum loss of earning capacity in reasonable probability in the future of a sum near $1,200.00. At most, the appellant asserts, the loss would be near $1,500.00 even if the total income of the partnership, composed of him and his wife, were included. Therefore, according to the appellant, the jury finding of $10,-000.00 is not supported by the evidence, is

contrary to the greater weight and preponderance of the evidence and is excessive by at least $8,000.00.

We now move to the area of the evidence that tends to prove loss of earning capacity in the amount found by the jury. The overall tenor of the doctor's testimony is to the effect that there is serious doubt that surgery would benefit the condition of the plaintiff's neck. For example, the expressions of the doctor that the arthritic condition, such as is in plaintiff's neck, often precludes good results; that "barring complications" the plaintiff would be able to return to work six months after surgery; and that if the plaintiff "could learn to live with" the pain and discomfort, he should (without surgery).

In Thompson v. Quarles 297 S.W.2d 321, 327 (Tex.Civ.App.—Galveston 1956, n. r. e.) the Court said in considering a similar situation: ". . . what a man of ordinary prudence would do under stated circumstances is ordinarily a question of fact —rarely, if ever, a question of law." The Court went on to say: "Negligence vel non in refusing to submit to surgery is to be judged in relation to the risks and pain involved, including that from general anesthesia, the possibility of failure, or that the injured condition may be made worse, etc." The court in *Thompson* described the operation involving the spine as "a radical one with no positive assurance of safety. Surely such a radical operation would involve considerable pain, and defendant's testimony shows a substantial possibility of failure". Similar evidence was adduced from the testimony of Dr. York. The vice in appellant's position lies in its assumption that appellant is entitled, *as a matter of law,* to the probability that operative procedure would restore the plaintiff to his former earning capacity, free of disability. In the case at bar, as in *Thompson,* supra, the matter of his submission to surgery is a jury question of fact of what a man of ordinary prudence would do under these circumstances. See Moulton v. Alamo

Ambulance Service, Inc., 414 S.W.2d 444 (Tex.Sup.1967). The jury was entitled to infer that the plaintiff's action in foregoing surgery in the future would be reasonable, considering all of Dr. York's testimony. That inference, together with the jury's consideration of a future loss of $2,400.00 per year for 17 to 22 years (life expectancy), would bring their finding of $10,000.00 well within the range of what the evidence would sustain. See McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710 (1943). We hold that such finding is not contrary to the greater weight and overwhelming preponderance of the evidence. Appellant's point three is overruled.

■ Next, we consider appellant's points numbered 4, 5, 6, 7, 8, and 9 wherein complaint is made of the submission of special issue no. 5 and the accompanying definition of "assured clear distance" because such is a comment on the weight of the evidence and constitutes a multifarious and duplicitous submission of multiple ultimate factual theories of negligence, which were also submitted: application of brakes, speed, turning from inside to the outside lane and turning to the right. The "assured clear distance" issue and the related proximate cause issues were answered favorably to the plaintiff. The others mentioned: brakes, speed and turning were answered favorably to the defendant-appellant. However, the jury found that Kulp (appellant's employee) failed to keep a proper lookout (special issue no. 12) and that such failure was a proximate cause of the occurrence in question (special issue no. 13). These lookout findings are not complained of by the appellant on appeal and such findings are sufficient to sustain liability against the appellant. So the submission of the issues concerning "assured clear distance," even if that was error, does not amount to reversible error. Texas & N. O.R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160 (1937); Couch v. Hale, 404 S. W.2d 920 (Tex.Civ.App.—Corpus Christi 1966, n. w. h.); Harris v. Reeves, 421 S.

W.2d 689 (Tex.Civ.App.—Waco 1967, n. r. e.); Rule 434, Texas Rules of Civil Procedure. Appellant's points numbered 4, 5, 6, 7, 8 and 9 are overruled.

Judgment of the trial court is affirmed.