GULF INSURANCE COMPANY, Appellant,

v.

Jesse Mae JOHNSON, Appellee.

No. 17905.

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 2, 1981.

Rehearing Denied April 16, 1981.

Byron Lee, Butler, Binion, Rice, Cook & Kanpp, Houston, for appellant.

Ronald Tucker, Houston, for appellee.

PEDEN, Justice.

Gulf Insurance Company appeals from a judgment rendered on jury findings awarding Mrs. Jesse Mae Johnson 360 weeks of worker's compensation benefits for the death of her son, Richard Johnson, plus $1,250 for his burial expenses. Twenty-year-old Richard Johnson was employed as a dishwasher and kitchen helper at Echo Hill Ranch, a recreational youth camp, during the fourteen days before the afternoon of June 16, 1977, when ranch employees discovered his body floating in the shallow water of a river on the premises of the camp. His death certificate indicated that accidental drowning was the cause of his death.

The appellant complains that the evidence was legally or factually insufficient to support the submission of issues inquiring as to compensable injury in the course and scope of employment, producing cause, and wage rate. The carrier also says that the evidence was insufficient to show that there was a policy of insurance in effect on the date in question, that the trial court erred in allowing certain exhibits and testimony to be admitted in evidence and in permitting a witness to be treated as an adverse party. We affirm.

The carrier's first three points of error assert that there was no evidence or insufficient evidence of a compensable injury in the course and scope of employment which injury was a producing cause of the death of Richard Johnson. The appellant also

says there was no evidence to support the trial court's instructing the jury concerning injuries received while an employee is engaged in a recreational or social activity.

Mrs. Johnson, mother of the deceased, testified that she was present when Richard was hired to be a dishwasher, kitchen helper, and handyman at a salary of $80–$90 per week, including sleeping quarters, meals, horseback riding, fishing, canoeing, and swimming; he could have gotten a dishwashing job at home, but by taking the ranch job he could do all of those things. Louise Butler, the cook at Echo Hill Ranch who hired Richard, testified that she told him he would be able to use all of the ranch facilities, including swimming and canoeing, in addition to being paid his salary. Mrs. Minnie Friedman, co-owner and co-director of Echo Hill, testified that controlling the kitchen crew is part of her responsibility, that she did not interview Richard but did talk with him very plainly during orientation about the fact that the waterfront was absolutely restricted and that the deep swimming area was off limits at all times. She didn't walk him around the ranch to show him which water was deep, however, and doesn't know whether anyone else did. Dr. S. Thomas Friedman, co-owner and co-director of Echo Hill, testified by deposition that no one is on duty at the deep water spots on the ranch's river unless the children are there, that kayaks are pulled up to the shore on the shallow side of the river where a person can wade in, and that of course a kayak can go from shallow to deep water. Minnie Friedman testified that there were no signs to indicate the presence of deep water or that one should not swim without a lifeguard.

There was evidence that Richard was required to and did stay on the ranch 24 hours a day and that he was on call all the time. He would work in the kitchen during the three meal periods, and between meals he could go anywhere he pleased within the area, as long as he was back in time for the next meal. The evidence is conflicting as to whether his death, which occurred on a Thursday, was on his day off. Both Dr. and Mrs. Friedman testified that the kitchen crew was off duty every Thursday and Sunday afternoon and evening. Louise Butler first said that they were off on Sundays and Thursdays, then later indicated that Wednesdays and Sundays were the usual days off. The jury was entitled to conclude that the day of his death was not an off day for him. In addition, the jurors had a right to believe that he was on call when he was not in the kitchen and that he was expected to utilize the recreational facilities as part of his salary. They were not required to accept the Friedmans' testimony that Richard was told not to use the swimming facilities. It was not established as a matter of law that Richard was violating any rule or doing anything other than what was expected of him while he was on call by being in the swimming area. Mrs. Johnson stated that she was never told by anyone that Richard was disobeying any instructions, violating any rules, or swimming in the wrong area at the time of his death.

■■■ Gulf argues that Richard Johnson's was an unexplained death and that no evidence in the record provides a basis for determining what happened to him. That a deceased employee sustained a fatal accidental injury may be established by circumstantial evidence alone; moreover, not every other reasonable hypothesis need be excluded. *Traveler's Insurance Co. v. McKain*, 186 F.2d 273 (5th Cir., 1951). See *Couch v. Hale*, 404 S.W.2d 920 (Tex.Civ. App.1966, no writ). The jury ordinarily must determine the weight given to such circumstances. *Id.* The death certificate is prima facie evidence that the immediate cause of death was accidental drowning, and no evidence contradicting this or suggesting another cause was introduced. Mrs. Butler testified that when she last saw Richard he was wading in shallow water with his trousers rolled up, and she told him he wasn't supposed to be there alone. His body was found in the river, and there was evidence that he was wearing a bathing suit. There is sufficient circumstantial evidence to show that Richard's death was the result of accidental drowning and thus to support findings that he received an acci-

dental injury on or about June 16 and that it was producing cause of his death.

Citing *Scott v. Miller's Mutual Fire Insurance Co. of Texas*, 524 S.W.2d 285, 289 (Tex.1975), the appellant contends that the court there stated that to support a jury finding in cases of unexplained injury or death there must be evidence that: 1) the employee was injured on his employer's premises during working hours on a working day, and 2) the employee was injured at a place where he might properly have been in the performance of his duties. We disagree. Rather, the Supreme Court recited those facts and said they constituted facts in the *Scott* case. The Court stated this rule:

> To show that his injuries were sustained in the course of employment, it was incumbent upon petitioner to establish that they had to do with and originated in the work of his employer and were received by him while engaged in or about the furtherance of the employer's affairs or business.

In the case of *Associated Employers Lloyds v. Wiggins*, 208 S.W.2d 705, 706–07 (Tex.Civ.App.1948, writ ref'd. n.r.e.), it was held that there was nothing to show that the deceased employee was on a mission of his own at the time he was struck by a bottle while traveling a route customarily traveled in the performance of his duties, although he often went across the street to a drug store or to a cafe. The court quoted from 120 A.L.R. 683, 684, stating:

> It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.

The court further stated:

> But even if he had temporarily left his work to go to a cafe or drug store or to run some errand not connected with his employment, we are not prepared to hold as a matter of law that his fatal injuries were not received in the course of his employment. He was struck by the bottle at a place where he often was and would be in carrying out the duties of his employment.

*See also Elledge v. Great American Indemnity Co.*, 312 S.W.2d 722 (Tex.Civ.App.1958), *writ ref'd. n.r.e. per curiam*, 159 Tex. 288, 320 S.W.2d 328 (1959).

In our case it is clear that Richard was on call 24 hours a day on his employers' premises, he slept there, and he was available if needed. His right to use the recreational facilities was a part of his employment agreement. Man does not live by bread alone, and Richard would be expected to be a better employee if he could avoid boredom by wading or swimming or by finding other recreation while staying available for call on the premises. The jury was entitled to conclude that Richard accidently drowned while doing what might reasonably have been expected of him under the circumstances. It was noted in a well-reasoned opinion by former Chief Justice James A. Ellis for the Amarillo Court of Civil Appeals, *Insurance Company of North America v. Estep*, 501 S.W.2d 352, 355 (Tex. Civ.App.1973, writ ref. n.r.e.):

> It has been held that if the terms of the contract of employment require the workman to sleep on the premises of the employer, he is performing services having to do with and originating in the business of the employer while he is on the premises, even when off active duty, if he is doing what might be reasonably expected of him under the circumstances. *Texas Employers' Ins. Ass'n v. Lawrence*, 14 S.W.2d 949 (Tex.Civ.App.-Eastland 1929, writ ref'd.); *Southern Surety Co. v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.-Eastland 1931, writ ref'd.).

In *Estep* the claimant was injured when shoved by another employee while Estep was preparing his own supper on the premises of the cotton gin where he worked and lived. He was on call 24 hours a day. The

court noted that "whether an employee sustained an injury while in the course and scope of employment must be determined on the peculiar facts of each case and as a question of fact. (citation omitted). Also, it is not required that the injury should have occurred during the hours of actual service, nor that at the time of being injured the employee should have been engaged in the discharge of any specific duty incident to his employment. *T.E.I.A. v. Anderson*, 125 S.W.2d 674 (Tex.Civ.App.1939, writ ref'd.)"

▮ Gulf says the trial court erred in giving this instruction to the jury because there was no evidence to support its submission:

A death occurring while the employee is engaged in recreational or social activities is not in the course of employment unless:

(1) participation in such activities is expressly or impliedly required by the employer; or

(2) the employer derives some benefit from such activities other than the health and morale of the employees; or

(3) such activities take place with the employer's express or implied permission at the place of employment or in the immediate vicinity thereof while the employee is required to hold himself in readiness for work; or

(4) such activities take place with the employer's express or implied permission on the employer's premises during lunch or designated recreation period.

We find no reversible error in the submission of this instruction. The jury was entitled to decide from the evidence that Richard Johnson was permitted to wade in the shallow water, and there was no proof that he went into deep water. We think it clear that item (3) was raised by the evidence, and we find no harm to the carrier in submitting the rest of the instruction. Its form was approved in *Clevenger v. Liberty Mutual Insurance Company*, 396 S.W.2d 174 (Tex.Civ.App.1965, writ ref. n.r.e.).

We overrule the appellant's first three points of error.

Gulf Insurance complains in its next three points that there is no competent evidence (or insufficient evidence) to support submission of special issues and to support the jury findings 1) that Richard Johnson did not work 210 days in the same or similar employment, or 2) that there was no employee of that class who worked at least 210 days in the year immediately preceding the accident in the same or similar employment and locale.

▮ The burden rests upon the compensation claimant to show by competent evidence that his average weekly wages cannot be computed under either Subsections 1 or 2 before resort may be had to Subsection 3 of Article 8309 § 1. *Texas Employer's Insurance Association v. Ford*, 153 Tex. 470, 271 S.W.2d 397, 399 (1954). There was evidence, as we have noticed, that Richard's compensation included sleeping and eating, horseback riding, fishing, canoeing, and swimming. Mr. Friedman testified that Richard was to receive $75 or $80 per week in money, plus room and board worth an additional $75 or $80 per week. The deceased worked only 13 or 14 days for the ranch, and he worked only 140 to 150 days during the year immediately preceding his death, so it is obvious that his wage rate cannot be computed under Subsection 1.

▮ His mother, who operated a restaurant in Houston, stated that dishwashers normally work only a week or two. They don't consider it a good job, so they just work a while and quit. She knows of no one who worked at least 210 days in Kerr County, Texas, in the same or similar capacity as her son during the year preceding his death.

Louise Butler said that she knew of one person, Leon Dodson, who worked at least 210 days of the year preceding Richard's death in the same or similar employment as Richard and in the same or a neighboring place. She didn't know his wage rate, however, and it developed that he washed dishes only three months of each year; the rest of the time, he lived on the premises but apparently had no kitchen duties.

As it was stated in *I.C.T. Insurance Company v. Wineman*, 308 S.W.2d 549 (Tex.Civ. App.1958, writ ref.n.r.e.),

We think that the tendency shown by recent decisions of our courts is to require slight proof to negative section 1, Subdivisions 1 and 2 of said Article 8309, especially where no real contest is made of the wage issues: *Transport Ins. Co. v. Cossaboon*, Tex.Civ.App., 291 S.W.2d 746; *Employers Liability Assur. Corp. Ltd. v. Manning*, Tex.Civ.App., 188 S.W.2d 268 (wr. ref. w.m.); *Southern Underwriters v. Boswell*, Tex.Civ.App., 141 S.W.2d 442 (which opinion was affirmed by our Supreme Court in 138 Tex. 255, 158 S.W.2d 280).

In our case the insurance carrier made no real contest of the wage issue. We hold that the evidence was sufficient to establish that weekly wages for Richard could not be computed under Subsections 1 or 2 of Article 8309 and that what he received as pay was just and fair. *See generally Commercial Standard Insurance Co. v. Villa*, 313 S.W.2d 627 (Tex.Civ.App.1958, writ ref'd.n. r.e.).

The appellant complains in point number 8 that it was error to allow in evidence Exhibit 12, the answer of Mr. and Mrs. Friedman to a negligence suit filed against them by Richard Johnson's mother, paragraph VI of which recited that "Defendants would further show that this case is barred by the worker's compensation law which prevents a suit against a person's employer."

■ An employer's statement does not constitute an admission by the defendant in a worker's compensation case. *Great American Indemnity Co. v. Elledge*, 159 Tex. 288, 320 S.W.2d 328 (1959). We hold that the trial court erred in admitting the Friedman's pleading. We have considered the entire record in this case, however, and we conclude that the error was not harmful to the appellant. Rule 434, Texas R.Civ.P.

■ Gulf next complains that it was reversible error for the trial court to admit Richard Johnson's death certificate and two photographs of the scene of the accident. Gulf's objection to admitting the death certificate was that a copy was not provided to the appellant's counsel three days prior to trial as required by Art. 3731a, Tex.Rev.Civ. Stat., and that there was insufficient time for counsel to verify that the proffered document was a true and correct copy. Gulf did not claim surprise or move for a continuance and does not contend that the copy was an inaccurate one. The error is not a reversible one. As to the photographs, Gulf's complaint is that the proper predicate was not laid for their admission. The photographs depict the waterfront area where the drowning allegedly occurred. When Louise Butler was asked if Exhibit 10 fairly depicted what is shown on it, she said that it did. She replied that "deep water always looks like this" when asked if Exhibit 11 fairly showed the way it looked in June of 1977. Mrs. Butler would not say whether the pictures were taken on the day of the accident. It is not necessary that the pictures be taken on the day in question; no error was shown.

■ In point of error seven, Gulf says there was no evidence that a policy of insurance was in force and effect on the date in question. Rule 93(n), Tex.R.Civ.P., provides, in pertinent part:

In the trial of any case appealed to the court from the Industrial Accident Board the following, if pleaded, shall be presumed to be true as pleaded and have been done and filed in legal time and manner, unless denied by verified pleadings:

. . . .

(6) That the insurance company alleged to have been the carrier of the workmen's compensation insurance *at the time of the alleged injury* was in fact the carrier thereof. (emphasis added)

The plaintiff's petition alleged that Gulf was the carrier of a policy in force and effect at the time of the accident. Only paragraph V of Gulf's answer to the suit, concerning wage rate, is verified. A plain reading of Rule 93(n) shows that the appellant's seventh point of error is not well taken.

The appellant's ninth and tenth points of error are:

9. The trial court erred in allowing into evidence irrelevant testimony which had the cumulative effect of prejudicing Appellant as a matter of law.

10. The trial court erred in allowing witness Louise Butler to be treated as an adverse party and to be allowed to testify as to inadmissible hearsay.

The appellant recites seven occurrences during the trial which it contends so prejudiced the jury as to require reversal, to wit: 1) admission of deposition testimony concerning the nature of the recreational facilities for children at the camp, 2) admission of evidence of safety measures to protect children in the swimming area, 3) admission of evidence regarding Mrs. Butler's unwillingness to appear in court and testify, 4) admission of Mrs. Johnson's testimony as to the character traits of dishwashers, 5) permitting of leading questions to Louise Butler by the appellee's counsel, who called her as a witness, 6) the court's permitting Gulf's counsel to argue with Mrs. Butler and elicit hearsay statements from her, and 7) admission of Mrs. Johnson's testimony concerning hearsay statements by Mrs. Butler.

 The testimony concerning the recreational facilities properly related to the question of what was included in Richard Johnson's salary; the evidence of safety measures taken in and around the swimming area related to whether or not accidental drowning was the cause of death and whether Richard Johnson was in the course and scope of his employment. Counsel for the appellant objected to Mrs. Johnson's testimony concerning the working habits of dishwashers, and the objection was sustained, not overruled; her testimony concerning what Louise Butler said Richard's salary would include was offered for the purposes of impeaching Mrs. Butler's version. There was so little argumentative questioning of Mrs. Butler that it was insignificant. As to the propriety of the trial court's allowing Mrs. Johnson's counsel to ask leading questions of Mrs. Butler, it is well recognized that such a decision rests largely within the discretion of the trial court. 1 R. Ray, *Texas Practice*, §§ 575, 579 (3rd ed. 1980) and authorities cited therein. An abuse of discretion is not shown in the case at bar. A reading of Mrs. Butler's testimony clearly shows her antagonism toward questions by the appellee's counsel; it was proper to allow leading questions under the circumstances.

Finally, the cumulative error point is overruled. A reading of the record as a whole does not persuade us that the trial court judgment should be reversed.

Affirmed.

COLEMAN, C.J., and SMITH, J., participated.