## ASSOCIATED EMPLOYERS LLOYDS v. WIGGINS.

### No. 14917.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 6, 1948.

Rehearing Denied March 5, 1948.

Collins & Taylor, of Fort Worth, for appellant.

Freeman & Wardlaw, Sam Woodward, Ardell M. Young, and M. Hendricks Brown, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

The appeal is from a judgment awarding appellee a recovery of workman's compensation for the death of her husband.

Appellant, the insurance carrier, moved for an instructed verdict, and later for judgment non obstante veredicto. It contends that there is no evidence to show

that the employee received the fatal injury in the course of his employment. The evidence, considered in the light most favorable to the verdict, is sufficient to show the following: Charley Wiggins, a Negro, had been employed by Bewley Mills, in Fort Worth, for many years prior to his death. He did various kinds of work in and around the mill, including the washing and greasing of cars and trucks. Although there is some conflict in the evidence about it, there is testimony to the effect that he was in the habit of driving cars from a loading dock to a wash and grease rack a short distance away. On the employer's premises there was located a warehouse which was bounded on the east by Frank Street, and on the south by Ninth Street. The dock was on the south side of the warehouse, on Ninth Street, and the wash and grease rack and the garage were north of the warehouse. The evidence shows that Wiggins would walk from the wash and grease rack to the dock either through the warehouse or along Frank Street. About three o'clock in the afternoon of November 24, 1945, some two hours before the end of his usual hours of employment, Wiggins left the garage and proceeded south on Frank Street alongside the warehouse. As he did so, a bottle thrown from a window of the warehouse struck him on the head. The evidence does not show who threw the bottle or why it was thrown. He went into the warehouse and asked some other Negro employees there if they knew who threw the bottle. None of them admitted having done so, whereupon Wiggins went outside and returned with a piece of the bottle in his hand, and again sought to find out who threw the bottle which struck him. He became engaged in an altercation with Kirk McKenzie, one of the Negro employees in the warehouse. McKenzie stabbed Wiggins with a knife, and Wiggins died within a few minutes. While there is some testimony to the effect that Wiggins used abusive language toward McKenzie and that McKenzie was acting in self-defense, there is other testimony to the contrary, showing that McKenzie made an unwarranted attack on Wiggins.

There is no evidence of any previous trouble between the two men.

There is no direct evidence showing whether Wiggins was on a mission for his employer as he walked along Frank Street, when he was hit by the bottle, or whether he was on a personal mission having nothing to do with his employer's business. The evidence shows that the employees, including Wiggins, often went across the street to a drug store, or to a cafe, and appellant argues that the facts and circumstances established by the direct evidence are equally as consistent with an inference that he was on a mission of his own as with an inference that he was on a mission for his employer. We do not agree with this contention. At the time he was hit by the bottle, Wiggins was traveling a route customarily traveled in the performance of his duties. He was dressed in the overalls and rubber boots which he usually wore when washing and greasing cars. He was seen driving cars from the dock to the wash rack on the day of his death, and was working on a car within thirty minutes of the time he left the garage and walked south on Frank Street. It was during his regular working hours. There being nothing to show that he was on a mission of his own, we think that the more logical inference to be drawn from the facts and circumstances proved is that he was engaged in the performance of the duties of his employment at the time he was struck by the bottle. By analogy we might apply the following rule, as it is stated in the annotation appearing in 120 A.L.R. 683, 684:

"It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts."

But even if he had temporarily left his work to go to the cafe or drug store or to run some errand not connected with his

employment, we are not prepared to hold as a matter of law that his fatal injuries were not received in the course of his employment. He was struck by the bottle at a place where he often was and would be in carrying out the duties of his employment. The bottle appeared to have come from a window of the employer's premises. It was a natural thing for him to do to investigate and try to determine the source of this peril. So far as Wiggins knew, the danger might recur at a time when he would be on duty.

In either event, we think that Wiggins' acts in investigating the incident were so closely connected with his employment that it could not be said here, as a matter of law, that there was no evidence to support the finding of the jury that the injury was received in the course of his employment.

We shall not again restate the rules and review the authorities pertaining to award of workmen's compensation for injuries received by an employee in an altercation which grows out of the circumstances of his employment. See McClure v. Georgia Casualty Co., Tex.Com.App., 251 S.W. 800; Indemnity Ins. Co. of North America v. Scott, Tex.Civ.App., 278 S.W. 347, affirmed by the Supreme Court, Tex.Com. App., 298 S.W. 414; Aetna Life Ins. Co. v. Windham, 5 Cir., 53 F.2d 984; Southern Surety Co. v. Shook, Tex.Civ.App., 44 S.W.2d 425, writ refused; Travelers' Ins. Co. v. Culpepper, Tex.Civ.App., 82 S.W. 2d 1054, writ dismissed; Traders & General Ins. Co. v. Mills, Tex.Civ.App., 108 S.W.2d 219, writ dismissed; Commercial Standard Ins. Co. v. Austin, Tex. Civ.App., 128 S.W.2d 836, writ dismissed, correct judgment; Consolidated Underwriters v. Adams, Tex.Civ.App., 140 S.W. 2d 221, writ dismissed, correct judgment.

The cases cited by appellant are distinguishable from the one on appeal. Service Mutual Ins. Co. of Texas v. Banke, Tex.Civ.App., 155 S.W.2d 668, writ refused, did not involve an altercation between employees, and is helpful here only in so far as it states general rules relating to the question of course of employment. Jax Beer Co. v. Tucker, Tex.Civ. App., 146 S.W.2d 436, writ dismissed, cor-

rect judgment, involved a case where the dispute between the employee and another was over a personal debt owing to the employee, and did not involve a claim for workman's compensation. Helmerich-Payne, Inc., v. Debus, 148 S.W.2d 243, was not a workmen's compensation case. Texas Employers Ins. Ass'n v. Grammar, Tex. Civ.App., 157 S.W.2d 701, did not involve an altercation between employees. The question there was whether an employee could recover compensation for injuries received while on his way to work. In Cassell v. United States Fidelity & Guaranty Co., 115 Tex. 371, 283 S.W. 127, 46 A.L.R. 1137, the employee was allowed a recovery for injuries received as a result of a prank played by another. The case does not support the arguments made by appellant in this case. In Richardson v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 46 S.W.2d 439, writ refused, denial of compensation was based on the fact that the quarrel was a personal one between the employees, having nothing to do with the employer's business, and also on the fact that the injured employee willingly engaged in the horseplay leading up to the quarrel, and was the aggressor throughout the affair. The controlling distinction between Cherry v. Magnolia Petroleum Co. et al., Tex.Com.App., 45 S.W.2d 555, and the case before us is this: In the cited case the trial court, in a non-jury trial, found against the compensation claimant. Hence, all disputed fact issues were resolved against him on appeal. There was some evidence to show that the employee came to his death in a fight which he brought about by making a willful, unlawful and unjustifiable attack on the other party. In the case before us the jury found in favor of the compensation claimant. The opinion in the cited case points out the difference in the situation where the employee provokes the fight by making an unjustifiable assault on the other party, and the situation where he does not provoke it.

Article 8306, Sec. 8a, Revised Civil Statutes, names as a beneficiary, in case of accidental death of an employee, the wife who has not at the time of the injury without good cause and for a period of

three years prior thereto abandoned her husband.

Special Issue No. Eight, with accompanying instructions, reads as follows:

"Question Eight: Do you find from a preponderance of the evidence that Lexie Wiggins, on November 24, 1945, and for a period of three years prior thereto had not abandoned Charley Wiggins?

"Your answer to this question will be, either (A) She had not so abandoned Charley Wiggins. Or (B) She had so abandoned Charley Wiggins.

"Answer: (A) She had not so abandoned Charlie Wiggins.

"In connection with this issue, Question Eight, you are instructed that the word 'abandoned', as used in this issue, means the act of a wife voluntarily leaving the bed and board of her husband, as a wife, with the intention on her part not to return and live with him as husband and wife, and perform her marital obligations as a wife toward him."

Special Issue No. Nine, submitted conditionally upon a finding that appellee had abandoned her husband, inquired if such abandonment was with good cause.

The answer of the jury was that she had not abandoned him, hence the ninth issue was not answered.

■ Appellant contends that the evidence shows as a matter of law that appellee had abandoned her husband without good cause for a period of three years prior to the date of the fatal injury. We overrule this contention. The evidence shows that appellee and Wiggins were married in 1941, that after about a month they separated, that she brought a suit for divorce, and that later the divorce suit was dismissed. At the time of the separation Wiggins moved from the premises they both occupied, and for more than three years before his death rented a room a short distance from the premises occupied by appellee, and spent much of his time there. The proof also shows, however, that from 1941 until the date of his death, Wiggins visited the premises occupied by appellee several times a week, that they frequently slept together and had sexual

intercourse, that he regularly gave her money from his wages, that he paid many of her bills, that he ate many meals with her at what we might call her house, and that they appeared to others to be living together as husband and wife. In the first place, the evidence does not show without dispute that appellee's act in leaving her husband shortly after their marriage was an abandonment without good cause. Next, if there was such an abandonment, the proof is sufficient to show that appellee soon resumed her marital relations with her husband, and it could not reasonably be held as a matter of law that there was an abandonment by appellee of her husband during the three years preceding his death.

■ Appellant complains of the form of the eighth issue on the ground that it inquires only as to an abandonment that might have occurred within the three year period next prior to the accident. The issue follows the language of the statute, and clearly inquires whether there was an abandonment for the three year period preceding the accident.

Appellant also assigns error in the refusal of the court to submit the issue of abandonment in a different manner, not necessary to set out here. We overrule the point, because we are of opinion that there was no error in the manner of submission employed by the court.

Appellant also complains of the refusal of the court to include in his instruction accompanying the issue of abandonment a charge to the effect that mere occasional acts of sexual intercourse, sleeping together and visits do not constitute living together as husband and wife. We hold that the issues and instructions submitted by the court were sufficient to constitute a proper submission of the question of abandonment.

■ The seventh, eighth and eleventh points of error complain of matters which, in our opinion, were not such matters as would reasonably be calculated to cause and probably did cause the jury to return a verdict different from what otherwise might have been returned. Rule 434, Texas Rules of Civil Procedure.

The second special issue inquired if the injury was an accidental injury. The third issue inquired if the injury was received in the course of employment. Following the second issue was this instruction: "If you have answered the preceding question, yes, and only in that event, then answer:" Appellant argues that the instruction was erroneous in that it informed the jury as to the effect of their answer to the second issue. The point is overruled. 41 Tex.Jur., Trial—Civil Cases, Sec. 285, page 1128, and authorities there cited. See also the discussion and the authorities cited in 16 Texas Law Review, page 383.

We overrule all points of error and affirm the judgment of the trial court.