**AMERICAN GENERAL INS. CO. v. JONES et vir.**

No. 12397.

Court of Civil Appeals of Texas. Galveston.

June 5, 1952.

Rehearing Denied July 17, 1952.

Vinson, Elkins & Weems, C. M. Hightower and B. Jeff Crane, Jr., of Houston, for appellant.

Bliss Daffan and Wm. B. Irwin, Jr., of Houston, for appellees.

CODY, Justice.

This is a workmen's compensation case. Here Mrs. William Jones, joined by her husband, sued, as the sole beneficiary under the Workmen's Compensation law entitled to recover benefits, for the death of her father, Walter Granville Wheat, who, at the time of his death, was employed as a night watchman for the Gulf Bitulithic Company, which company had the contract to con-struct that part of the Galveston-Houston Super Highway, known as the Galveston Wye Project. The deceased's body was found in the early hours of November 6, 1950, on the shoulder of the highway close to his overturned automobile near a barricade across the cement slab which constituted the more northerly lane of the highway, the more southerly lane being separated from the northerly lane by an esplanade. The American General Insurance Company was the deceased's employer's compensation carrier. Said compensation carrier defended the suit on the plea that the deceased did not die from accidental injuries received in the course and scope of his employment.

The case was tried to a jury and over appellant's objection that the court should have directed a verdict in its favor, the court submitted the case to a jury upon special issues. Upon the answers of the jury to such special issues, the court rendered judgment that the plaintiff recover from the defendant compensation carrier the lump sum of $7,822.87.

Appellant grouped for presentation its first, second, third and eighth points, complaining respectively: (1) That the evidence was insufficient to raise the fact issue for the jury that the deceased died as a result of accidental injuries received in the course of his employment, (2) That the jury's finding in answer to special issue No. 3, to the effect that the injury which caused deceased's death was sustained while he was acting in the course of his employment, was against the great preponderance of the evidence, (3) That the jury's finding in answer to special issue No. 8 that at the time of deceased's death his contract of employment was not "confined and restricted to his duties as night watchman to the machinery and equipment and other property of the company, located at the batching-plant site," was against the great preponderance of the evidence, and (4) That there was no evidence to warrant the submission of special issue No. 3 referred to above.

We here insert a rough sketch of the plans of that portion of the aforesaid Highway known in this record as the Galveston Wye Project.

Batching Plant Site

1200 ft.

See below

To Houston

To Galveston

To Houston

To Galveston

To Alvin

To Gelveston

To Alvin

To Houston and Alvin

To Texas City

To Galveston

X where deceased met death and auto overturned, apparently trying to go around barricade

On the foregoing sketch we have indicated the three overpasses which are con-structed to accommodate the interchange roads which have been constructed there but which it is not necessary to indicate upon the sketch. The portion of the Galveston Wye Project where the overpasses are located has been referred to in this record as the "Wye Proper." The "X" on the sketch marks the location where the accident, which resulted in the death of the deceased, occurred. There is also located on the sketch the site of the batching-plant, which was used by the company in the construction of the Galveston Wye Project. It was located some 1200 to 1500 feet north of the Super Highway, adjacent to the railroad track upon which materials and equipment were brought to the project. The railroad track is not indicated.

Appellee introduced the testimony of Deputy Sheriff Newsom, Constable Hopkins and Mrs. Slade, who was a daughter of the deceased, to the effect that at various specified times they had been at the Galveston Wye Project while the highway was under construction during the hours that the deceased was on duty and had seen him driving his automobile on the highway and had been told by him that he was patrolling the highway to guard it and the property of the company and/or that he was looking for thieves so that he could recover some of the company's property. The testimony of said witnesses was admitted over the objection that it was hearsay and incompetent, but for present purposes we will assume that the evidence was competent and properly admitted. The tendency of such evidence was to establish that the deceased conceived it to be a part of his duty to patrol the highway for the purpose of protecting the company's property.

Mr. V. W. Homesley, who was the superintendent for the Gulf Bitulithic Company on the Galveston Wye Project, was placed on the witness stand by appellees for the purpose of establishing the deceased's rate of pay, hours of duty, etc., but on cross-examination by appellant he testified that the deceased's contract of employment was verbal; that when he was first employed about all of the company's property that he had to watch was dirt equipment which was located at the point on the highway marked "B"; but that the company also had property located at its batching-plant, which was some three-quarters of a mile distant from the point "B"; that the deceased could see from "B" the lights of the automobile of anyone who drove up to the batching-plant and that if anyone did, it was the duty of the deceased to go and inquire the business of anyone so approaching the batching-plant; that at the time deceased was first employed the paving equipment of the company, which had been used on the project, had been moved to do a job at Texas City, and that the batching-plant was locked up and the property which was there was too large to need any special watching; that he knew the deceased had an automobile which he came to work in but that it was no part of his duty to patrol the highway to watch the barricades or the flares which were set out at the barricades.

Mr. Homesley further testified that about the 1st of October, 1950, the company's paving equipment which had been over at Texas City was moved back and that the paving work, as distinguished from the excavation and dirt work, was resumed on the Wye project and the paving equipment was located at the "Wye Proper" and at the point marked "B"; that when the paving equipment, which had been used for paving on the Texas City job, was moved back, a Mr. Hilton, who had been night watchman over the company's property on the Texas City Job, was additionally employed as a night watchman on the Galveston Wye Project; and that at that time the deceased's duties were restricted to night-watching the property located at the batching-plant.

Mr. Hilton, aforesaid, was called as a witness for appellant. He testified that it was his duty to watch the machinery for pouring concrete which was located in the area of the project marked "B"; that he had seen the deceased only once, to know him, and that was some ten days before he met his death. Apparently the purpose of appellant in placing Mr. Hilton on the stand was to elicit testimony that the deceased was under the influence of alcohol on the occasion of their meeting. Upon cross-

examination of Mr. Hilton, appellee states in her brief, and appellant does not deny, that Mr. Hilton testified that after the death of the deceased it became his duty to night-watch all of the property; that this included watching the property at the batching-plant and patrolling the highway in his automobile to inspect the barricades and the flares.

■ From all of the testimony, we think that it was within the province of the jury to conclude that until Mr. Hilton had taken over the duty of patrolling the entire portion of the highway under construction in his automobile to see that the flares were lighted and barricades properly in place, that the deceased had been employed by the company to perform the duties which Mr. Hilton additionally took over after deceased was killed.

■ We overrule appellant's foregoing Points. In Associated Employers Lloyds v. Wiggins, Tex.Civ.App., 208 S.W. 2d 705 at page 706, (writ refused, n. r. e.), it was held: " 'It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts.' " See also Texas Employers Ins. Association v. Shipley, Tex.Civ.App., 260 S.W. 646; Texas Employers Insurance Association v. White, Tex.Civ.App., 68 S.W.2d 511.

Appellant introduced evidence that a man of the approximate age, height and build as the deceased's was seen in Hitchcock around 9:30 on the night of November 5, 1950, who was in a state of intoxication. He was in a 1929 Ford, equipped with screened windows. This was similar to deceased's automobile. The man, in response to his request, was given directions as to how to get to LaMarque, which involved crossing the highway which was under construction.

■ By Article 8309, Sec. 1, R.C.S., as amended in 1943, Vernon's Ann.Civ.St. art. 8309, § 1, an employee, who is injured while in a state of intoxication is not entitled to recover compensation benefits under the Workmen's Compensation Act. By special issue No. 5, the jury were instructed, among other things, that if they found from a preponderance of the evidence that the deceased was not at the time of his death in a state of intoxication, they would answer, "He was not in a state of intoxication." The jury did so find in answer to said special issue. Appellant apparently objects to the fact that the issue was submitted independently, instead of as a part of special issue No. 3, which inquired if the deceased received his injury while acting in the course of his employment. By its nature the issue of intoxication must be established by evidence which is normally different from evidence dealing with the scope of an employee's employment. Where the issue of intoxication is raised, the burden is on the plaintiff to establish that the employee was not in a state of intoxication when injured. No harm could have been done appellant in submitting the issue as an independent one. And we overrule appellant's fourth Point.

■ Appellant has grouped for presentation its Points 10–15, inclusive. In them appellant complains of the admission of evidence which it is claimed was inadmissible because hearsay. The evidence complained of were statements which were made by the deceased (1) in explanation of his patrolling the highway under construction in his automobile, and (2) his statements which revealed his intention to provide for his daughter, the appellee, so long as he lived. What a person says in explanation of his actions and in revealing his intentions, where his purpose in doing certain acts, or his intentions to provide for a member of his family is a matter at issue, is not hearsay, for what the person said is the best evidence as to what was in his mind. But if such statements are to be classed as hearsay evidence, then they are admissible as exceptions to the hearsay evidence rule.

We have duly considered appellant's other Points, but have concluded that they present no reversible error.

The judgment of the trial court is affirmed.