The MILLERS MUTUAL FIRE INSUR-
ANCE COMPANY OF DALLAS,
Appellant,

v.

J. C. SCOTT, Appellee.

No. 762.

Court of Civil Appeals of Texas,
Tyler.

Aug. 1, 1974.

Rehearing Denied Sept. 12, 1974.

Ramey, Flock, Hutchins, Grainger & Jeffus, Jack W. Flock, Mike A. Hatchell, Tyler, for appellant.

Ken T. Miller, Law Officers of Ken T. Miller, Tyler, for appellee.

McKAY, Justice.

The opinion heretofore delivered is withdrawn and the judgment heretofore rendered is set aside and the following opinion of the Court substituted therefor:

Appellee J. C. Scott brought this suit to recover workmen's compensation benefits for total and permanent disability alleged to have been sustained during the course and scope of his employment for Bloch Metals, Inc., Tyler, Texas, on February 6,

1970. The case was tried to a jury after the court overruled appellant's motions for instructed verdict at the close of appellee's case and at the close of all evidence. The jury's non-unanimous verdict was favorable to appellee, and, after appellant's amended motion for judgment in disregard of various issues was overruled, judgment was rendered against appellant for compensation benefits, medical expense, interest and costs.

Appellee was a metal or paper sorter and laborer for Bloch Metals. Bloch had a warehouse where paper and metal were unloaded, bundled and stored, and a scale house where incoming and outgoing shipments were weighed and where the employees punched in and out by a time clock. The warehouse was apparently divided into sections called the metal house and the paper house, and was located across the street from the scale house. Appellee worked principally in the paper house.

On the day of appellee's injury, February 6, 1970, the record shows he left home around 6:30 A.M. and was seen by Delma Kelly, a fellow employee, on the Bloch premises about 7:30 A.M. in the warehouse. Appellee attempted to help Kelly start a fork lift truck and the fork lift caught fire and appellee attempted to put out the fire with a fire extinguisher. He was unable to do so and the Tyler Fire Department was called to extinguish the fire.

The record indicates appellee was seen standing around the scale house around 7:00 A.M. and around 8:00 A.M., but there is no evidence that he ever punched in at the time clock on the outside of the scale house. Appellee was not seen by any witness from 8:00 A.M. until about the middle of the morning when he was found on the warehouse floor wedged in between an eight-foot pile of paper bales and some barrels on the floor. He had received an injury to his head and was found unconscious and bleeding at the mouth, nose and ear. Appellee could not remember anything concerning his injury. The record is silent whether he performed any work for his employer that morning after 8:00 A.M. or whether he was working at the time of his injury. Appellee could not testify what he was doing before or at the time of his injury, and no other employee offered as a witness saw him after 8:00 A.M. Appellee's location when he was found injured was not the place where he would have normally been working, although he did occasionally work in that area. There is also evidence in the record that appellee had been found sleeping on top of paper bales some three or four days before his injury and that he was sent home because he was intoxicated.

The witness Henson, a fellow employee, testified appellee smelled of alcohol and staggered when he walked and was drunk when he saw him at the scale house about 8:00 A.M. Henson also testified that he found a whiskey bottle on top of the bales above where appellee was found. The witness Gormley, another fellow employee, testified that appellee was intoxicated or drunk when he saw him at about 7:00 A.M. outside the scale house, and that he had seen him in that condition before, the last time being only three or four days earlier. Dr. Thomas, who saw and examined appellee after he was taken to the hospital, testified he smelled alcohol on appellee. Kelly, a fellow employee, testified he did not smell anything on appellee's breath and that appellee was not drinking or drunk in his opinion. The witness Rains, a passerby, said he did not smell any alcohol on appellee as he observed him at the scale house after the injury. Appellee's mother testified that she saw appellee before he went to work on February 6, 1970, and that he left home about 6:30 A.M., that he had not been drinking and did not smell of alcohol and that he had been at home the night before.

Appellant's first two points complain that there is no evidence that appellee's injury was sustained during the course and scope of his employment for Bloch Metals.

Appellant contends that appellee has not met the requirements of the statute that the injury occurred while the workman was engaged in or about his employer's business, and that the injury was not of a kind and character that had to do with and originated in the employer's business. Appellee maintains that where appellee reported to work and had performed some work that morning and was later found injured at a place where he had done work before, there is a presumption that he was within the course and scope of his employment for his employer at the time he was injured. We sustain these points.

Art. 8309, Sec. 1, V.A.T.S., reads in part as follows:

"The term 'injury sustained in the course of employment,' as used in this Act * * * shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

■ As pointed out in Texas General Indemnity Co. v. Bottom, 365 S.W.2d 350 (Tex.Sup.1963), and many other cases, the rule in Texas is that the requirements of the statutes are not met by proof that an injury occurred while the claimant was engaged in or about the furtherance of his employer's affairs or business, but he must also show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business or profession. See Walker v. Texas Employer's Ins. Assn., 443 S.W.2d 429 (Tex.Civ.App.—Ft. Worth, 1969, writ ref'd); Liberty Mutual Ins. Co. v. Upton, 492 S.W.2d 623 (Tex.Civ.App.—Ft. Worth, 1973, no writ); Shelton v. Standard Ins. Co., 389 S.W.2d 290 (Tex.Sup.1965).

■ In Superior Ins. Co. v. Jackson, 288 S.W.2d 149, 152 (Tex.Civ.App.—Dallas, 1956, reversed on other grounds, 156 Tex. 61, 291 S.W.2d 689), it is said: "Course or scope of employment in Texas has evoked many trying questions, especially when the principle has been applied to a particular state of facts. 2 Baylor Law Review 95. The three elements involved are the time, the place, and the circumstances under which the injury occurred." And in Superior Ins. Co. v. Jackson, 156 Tex. 61, 291 S.W.2d 689, 691 (1956) the Court said:

"In Jones v. Casualty Reciprocal Exchange, Tex.Civ.App., 250 S.W. 1073, 1074, wr. ref., * * * it is correctly said that the determination of whether an injury arises within the course of employment depends upon whether or not the facts bring the case within the purview of the act. Continuing the court says that the law allows compensation: '(1) Where the injury arises out of or is actually caused by the special work or job for which the employee was engaged, provided it happened or was received by the employee during the period of working hours or time required or authorized by the terms of the contract of employment; or (2) where the injury has relation to the work for which the employee was engaged, provided it happened or was received by the employee during the period of time that such employee was required or authorized by the terms of the contract of employment to be actually about or in furtherance of his employers' work or business.' This statement correctly interprets the law."

In Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238 at page 242 (1942), it is said:

"An injury arises out of employment * * * when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. In this connection, it may be said that a risk is incidental to employment when it belongs to or is connected with what a workman has to do in performing his contract of

service. (citing cases). Stated in another way, 'an injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business.'"

"Under our compensation statutes, to entitle an injured employee to compensation, it is not required that he be discharging some specific duty connected with his employment at the time of injury. In regard to such matter, it is sufficient if it is shown that the risk was incidental to the work being performed."

Our problem in the instant case is that there is no evidence in the record as to what appellee was doing when he received his injury or what caused the injury. He had been in the area of the scale house where the time clock was located and where the employees generally gathered before beginning work, and he had endeavored to help put out a fire on a fork truck, but from the 8:00 A.M. work time until he was found in the warehouse injured at approximately 10:00 A.M., there is no record of his whereabouts or of his activities. According to the record, no one told him where to work or what to do; if he worked, no one worked with him or saw him working. It would be speculation, conjecture and surmise that appellee was engaged in or about the furtherance of his employer's business and that his injury was of a kind and character that had to do with and originated in his employer's work or business unless under the circumstances found here, there would be a presumption or inference that he was in the course and scope of his employment and that the injury resulted therefrom.

Several Texas cases have followed a rule set out in 120 A.L.R. 683, 684 reading as follows:

"It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts."

The court in Texas Employers' Ins. Assn. v. Shipley, 260 S.W. 646 (Tex.Civ. App.—Beaumont, 1924, writ dism'd), under the facts of that case, held that such facts were "sufficient to authorize an inference" that the employee was acting in the furtherance of his master's business at the time of his death.

In Associated Employers Lloyds v. Wiggins, 208 S.W.2d 705 (Tex.Civ.App.—Fort Worth, 1948, writ ref'd, n. r. e.); American General Ins. Co. v. Jones, 250 S.W.2d 663 (Tex.Civ.App.—Galveston, 1952, reversed on other grounds, 152 Tex. 99, 255 S.W.2d 502), and in Elledge v. Great American Indemnity Co., 312 S.W.2d 722 (Tex. Civ.App.—Houston, 1958, writ ref'd, n. r. e., 159 Tex. 288, 320 S.W.2d 328), the court held that the facts justified the indulgence of the presumption that the employee was in the course of his employment. Many of the several states follow the presumption, some of statutory enactment and others by court decisions.

Such presumption is held to be rebuttable, and evidence that an employee was not in the performance of his work for his employer during working hours would destroy the presumption. 120 A.L.R. 683, 684, et seq., and Blue Book Supplemental decisions; 100 C.J.S. Workmen's Compensation § 513, pp. 462–464; Seventh Decennial Digest, Vol. 33; West's General Digest, 4th Series, Vols. 1–29 (1967–1974). A minority of states hold there is no presumption under such circumstances.

The key language applicable to this case seems to be "in the absence of evidence that he was not engaged in his master's business." The question then becomes whether the evidence that Scott did not

punch in for work on the day of his injury and the evidence that he was intoxicated was sufficient to rebut the presumption of course and scope of employment. We believe it was sufficient.

■ A presumption is simply a rule of law compelling the jury to reach a certain conclusion in the absence of evidence to the contrary. The presumption disappears, however, when evidence to the contrary is introduced. Sudduth v. Commonwealth County Mutual Ins. Co., 454 S.W.2d 196 (Tex.Sup.1970). When any evidence is introduced that would, in effect, create a fact issue, the presumption is rebutted. It is stated thusly in Empire Gas & Fuel Co. v. Muegge, 135 Tex. 520, 143 S.W.2d 763, 767 (Tex.Com.App.1940):

> "It is settled in this state, and by the weight of authority elsewhere, that such presumption is not evidence but rather a rule of procedure of an 'administrative assumption' which 'vanishes' or is 'put to flight' when positive evidence to the contrary is introduced."

McCormick and Ray, Texas Practice—Evidence, Sec. 53, p. 62 puts it this way:

> " * * * the presumption places upon the party against whom it operates the burden of producing evidence sufficient to justify a finding of the non-existence of the presumed fact. * * * Under this rule where the opponent produces sufficient evidence to justify a finding against the presumed fact the presumption vanishes and the situation is the same as it would have been had no presumption been created."

■ We are of the opinion that evidence that appellee did not punch in on the day of his injury, there being no record he was on the job, and evidence that he was intoxicated destroyed the presumption that he was injured in the course and scope of his employment, and appellee had the burden of proof on this issue as if no presumption had existed. Robertson Tank

Lines v. Van Cleave, 468 S.W.2d 354 (Tex.Sup.1971); Whittle v. Saunders, 396 S.W.2d 155 (Tex.Civ.App.—San Antonio, 1965, no writ); Hudiburgh v. Palvic, 274 S.W.2d 94 (Tex.Civ.App.—Beaumont, 1955, writ ref'd, n. r. e.); Mitchell v. Ellis, 374 S.W.2d 333 (Tex.Civ.App.—Fort Worth, 1963, writ ref'd); Rigsby v. Pitner, 334 S.W.2d 837 (Tex.Civ.App.—Houston, 1960, writ ref'd, n. r. e.); Thompson v. B. B. Saxon Co., 472 S.W.2d 325 (Tex.Civ.App.—San Antonio, 1971, no writ).

We are of the opinion that the presumption having been rebutted and therefore having disappeared there is no evidence that appellee was in the course and scope of his employment when he was injured. In the opinion of the court in Service Mutual Ins. Co. of Texas v. Banke, 155 S.W. 2d 668 (Tex.Civ.App.—San Antonio, 1941, writ ref'd) is found this statement:

> "All the other evidence in the case, considered most favorably to appellee, no more reasonably warrants an inference that the decedent's death resulted from an accident than it warrants an inference that it resulted from a heart attack. Appellee failed to respond to the burden, which was hers, to show the decedent's death was accidental and incurred in the line of duty. *The obvious fact that appellee could not meet this burden in the wholly obscured circumstances of the case can be given no weight in determining the rights and liabilities of the parties.*" (Emphasis added.)

The judgment of the trial court is reversed and judgment is rendered for appellant.

MOORE, Justice (dissenting).

I dissent. The jury found that appellee sustained an accidental injury while in the course and scope of his employment resulting in total and permanent disability. Due to a severe injury to his head and subsequent brain operations, he was unable to remember anything occurring on the day

of his injury. The majority holds that there is no evidence of probative force to support the jury's finding of accidental injury in the course and scope of employment.

It seems to me that the majority ignores the well-settled rule that in determining whether a jury verdict is supported by any evidence, the appellate court must view and interpret the evidence in the light most favorable to the plaintiff, disregarding all evidence and inferences therefrom favorable to the defendant. Cartwright v. Canode, 106 Tex. 502, 171 S.W. 696 (1914); Hart v. Van Zandt, 399 S.W.2d 791 (Tex.Sup.1965).

I am of the opinion that there is ample, direct and circumstantial evidence to support the jury's finding. If not, however, I am convinced that facts and circumstances give rise to the well recognized presumption of accidental injury in the course and scope of employment. While the majority recognizes that the presumption is applicable, they hold that the presumption was rebutted because (1) there was evidence raising a question of whether appellee punched the time clock on the morning of his injury and because (2) there was testimony raising an issue as to whether appellee may have been intoxicated. With regard to his failure to punch the time clock, the evidence shows that the clock was frequently out of order and did not always work. The fact that the time clock did not show he punched in is of no significance in that the undisputed proof shows he was on the job at 7:00 a. m. and at 8:00 a. m. With regard to the issue of intoxication, there was a sharp conflict in the testimony of the witnesses. In connection with Special Issue No. 3, inquiring as to whether or not appellee received an injury in the course of his employment, the court instructed the jury as follows: "An injury received while the employee is in a state of intoxication is not in the course of employment." By answering the issue affirmatively, the jury inferentially found that appellee was not intoxicated. In my opinion the evidence upon which the majority relies is inconclusive and fails to rebut the legal presumption of injury in the course and scope of employment.

If the record contained a jury finding that appellee was intoxicated, I would agree that the judgment should be reversed and rendered because such finding would constitute a complete defense. But such is not the case. The only finding of intoxication seems to have been made by the majority on this appeal, arrived at by disregarding all testimony thereon favorable to appellee.

I would hold that the evidence, together with the presumption, constitutes at least some evidence of probative force to support the jury's finding. I would affirm the judgment.