J. C. SCOTT, Petitioner,

v.

The MILLERS MUTUAL FIRE INSURANCE COMPANY OF TEXAS, Respondent.

No. B–4891.

Supreme Court of Texas.

June 4, 1975.

Rehearing Denied July 9, 1975.

286

Ken T. Miller, Tyler, for petitioner.

Ramey, Flock, Hutchins, Grainger & Jeffus, Jack W. Flock and Mike A. Hatchell, Tyler, for respondent.

WALKER, Justice.

On the principal question to be decided in this workmen's compensation case, we hold that the evidence supports the finding of the jury that the claimant's injury was received in the course of his employment.

J. C. Scott, petitioner, was injured on February 6, 1970, while on the premises of his employer, Bloch Metals, Inc., of Tyler. He brought this suit against Bloch's insurance carrier, respondent here, to recover workmen's compensation benefits. The trial court rendered judgment in his favor on the verdict for total and permanent disability, medical expenses, interest and costs.

The Court of Civil Appeals concluded, with one justice dissenting, that there is no evidence to support the jury's finding in response to Special Issue No. 3 that petitioner's injury was sustained in the course and scope of his employment. The judgment of the trial court was accordingly reversed, and judgment was rendered that petitioner take nothing. Tex.Civ.App., 513 S.W.2d 246. We reverse the judgment of the Court of Civil Appeals and remand the cause to that court for consideration of certain other points of error brought there by respondent.

There is no direct evidence of how petitioner was injured or what he was doing at the time. He was employed by Bloch primarily as a metal or paper sorter. The premises utilized by Bloch in its operations consisted of: (1) a warehouse where paper and metal were unloaded, bundled and stored, and (2) a scale house where incoming and outgoing shipments were weighed. The warehouse, which was located across the street from the scale house, was divided into two sections called the metal house and the paper house. Petitioner worked principally in the paper house.

For bookkeeping and pay purposes, the work week at Bloch began on Friday and ended on Thursday. Ordinarily no work was done on Saturday and Sunday. Petitioner was injured on Friday. There is evidence that he left home that morning around 6:30 a. m.; and he was seen in the warehouse on the Bloch premises about 7:30 a. m. by Delmar Kelly, a fellow employee. Petitioner helped Kelly start a forklift truck for use by Kelly in connection with his duties. The truck caught on fire, and petitioner attempted to put out the fire with a fire extinguisher. He was unable to do so, and the Tyler Fire Department was called to extinguish the blaze.

There is testimony from two other Bloch employees, Hinson and Gormley, that petitioner was seen standing around the scale house a few minutes before 7:00 a. m. and again at about 8:00 a. m. The time clock on

which employees punched in and out was on the outside of the scale house, and employees customarily gathered there for 25 or 30 minutes before beginning work. There is no evidence that petitioner punched in the day he was injured. The bookkeeper for Bloch testified that she had no time card for petitioner for that day. She further testified that the clock did not always work and that employees did not always punch in before beginning work.

Petitioner was found "about the middle of the morning" on the warehouse floor, wedged in between an eight-foot pile of paper bales and some barrels. He had received a severe injury to his head, was unconscious and was bleeding at the mouth, nose and ear. He has not been able to recall anything concerning his injury. He could not testify what he was doing before or at the time of his injury. He did not normally work at the place where he was found, but his duties as a metal sorter required that he occasionally "climb up on those bales and count them." He was not seen by any witness from 8:00 a. m. until the time he was found after being injured. Aside from petitioner's activities in helping Kelly start the forklift and attempting to extinguish the fire, the record is silent as to whether he did any work for his employer that morning. It is silent as to whether he was working just prior to the time he was injured, and there is no direct evidence of the cause of his injuries.

There is testimony that petitioner had been found sleeping on top of paper bales some three or four days before he was injured and that he was sent home because he was intoxicated. Several witnesses testified that petitioner smelled of alcohol, staggered when he walked, and was drunk when they saw him at the scale house around 8:00 o'clock Friday morning. One witness further testified that he found a whiskey bottle on top of the bales above where petitioner was lying after he was injured. On the other hand, there is evidence from two witnesses that would sup-

port the conclusion that petitioner had done no drinking the morning he was injured.

█ To show that his injuries were sustained in the course of employment, it was incumbent upon petitioner to establish that they had to do with and originated in the work of his employer and were received by him while engaged in or about the furtherance of the employer's affairs or business. See Art. 8309, § 1, Vernon's Ann.Civ.St.; Texas General Indem. Co. v. Bottom, Tex. Sup., 365 S.W.2d 350. As respondent points out, there is no direct evidence here that plaintiff "punched in" and commenced his regular duties, or that he was performing any work for his employer when injured, or that the cause of his injury originated in and had to do with his work for Bloch. Petitioner argues that he is entitled to the benefit of a presumption that he was injured in the course of employment.

When an employee is found dead at a place where his duties require him to be, or where he might properly have been in the performance of his duties, during the hours of his work, it has been said that in the absence of evidence that he was not engaged in his master's business, there is presumption that the accident arose out of and in the course of the employment within the meaning of the compensation statute. See Elledge v. Great Am. Indem. Co., Tex.Civ. App., 312 S.W.2d 722 (wr. ref. n. r. e., 159 Tex. 288, 320 S.W.2d 328); American General Ins. Co. v. Jones, Tex.Civ.App., 250 S.W.2d 663 (reversed on other grounds, 152 Tex. 99, 255 S.W.2d 502); Associated Emp. Lloyds v. Wiggins, Tex.Civ.App., 208 S.W.2d 705 (wr. ref. n. r. e.); 1 Larson's Workmen's Compensation Law, § 10.32; Annotation, 120 A.L.R. 683. Petitioner insists that the presumption should arise in a case such as this where, through loss of memory, the claimant is unable to recall the details of the accident. Respondent argues that there is no "presumption" of course and scope of employment merely because an employee is inexplicably injured on his employer's premises and that even if there were a presumption, it has been rebutted

here by evidence that petitioner was not injured in the course and scope of his employment. The Court of Civil Appeals discussed the presumption but concluded that it had been rebutted. It then reasoned that "the presumption having been rebutted and therefore having disappeared, there is no evidence that appellee was in the course and scope of his employment when he was injured."

█ We do not attempt to decide whether a presumption of course and scope of employment may arise in a case of this nature, because (1) the Court of Civil Appeals was correct in holding that any presumption had been rebutted, and (2) the existence or nonexistence of the presumption is wholly irrelevant since petitioner has a jury finding that he was injured in the course and scope of employment. As Professor Wigmore points out, it must be kept in mind that the office of a "real" or "true" presumption is to invoke a rule of law that *compels* the jury to reach the conclusion in the absence of evidence to the contrary from the opponent. 9 Wigmore on Evidence, 3rd ed. 1940, § 2491. Having obtained a jury finding that he was injured in the course of his employment, petitioner has no need for a presumption to compel the jury to reach that conclusion. His burden with respect to the scope of employment issue has been discharged if there is evidence to support the finding that was made.

█ Although any presumption of course of employment has been dispelled by the introduction of evidence to the contrary, the facts upon which petitioner would base the presumption have not disappeared. They remain in evidence and will support any inferences that may properly be drawn therefrom. Sudduth v. Commonwealth County Mut. Ins. Co., Tex.Sup., 454 S.W.2d 196. Our problem then is to determine whether the record contains evidence of probative value which, with the reasonable inferences therefrom, will support the jury's finding in response to Special Issue No. 3. In resolving that question we must

view the evidence in its most favorable light in support of the finding, considering only the evidence and the inferences that support the finding and disregarding all that are contrary thereto. See Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359.

■ Petitioner was injured on his employer's premises during working hours and on a working day. He was injured at a place where he might properly have been in the performance of his duties. Although he may not have punched in at the time clock, it does not clearly and affirmatively appear that he never began work on the day he was injured or that he stopped working to go on a personal mission. Earlier that morning he had engaged in certain activities that were related to his employer's work, and the only evidence tending to show that he was not furthering the affairs of his employer is the evidence of intoxication, the whiskey bottle on top of the bales of paper, and the incident when he was found asleep on top of the bales several days before. When the evidence and the inferences that may reasonably be drawn therefrom are viewed in the light most favorable to petitioner and all evidence to the contrary is disregarded, it is our opinion that the jury could reasonably conclude that he was probably injured in the course and scope of his employment.

The problem of proof in *Jones, supra,* was somewhat similar to that in the present case. The deceased workman was a night watchman for a highway construction company. His body was found lying close to his overturned automobile on the shoulder of the highway near a construction barricade erected to stop traffic. He was killed during working hours and on his employer's premises, but there was no direct proof as to what he was doing, where he was going, what his mission was, or why he was driving at that time of night. The insurance carrier offered evidence tending to show that the deceased was not working on the night in question but was seen elsewhere intoxicated and that he obtained directions for going to a location that involved crossing the highway. Although the judgments of the courts below were reversed here on another ground, the holding of the Court of Civil Appeals as to the legal sufficiency of the course and scope evidence was considered and approved. Without adverting to any "presumption" as the intermediate court had done, we observed that the decedent was on the employer's premises during working hours and was traveling a route which under his employment he had been employed to travel, and that the testimony relied on by the carrier was not so clear, unambiguous and positive as to establish as a matter of law that the deceased was outside his employment. We also observed that the same testimony when considered in the light of the intoxication testimony, the physical circumstances of the accident, and "in the absence of affirmative proof that the deceased was on his employer's business," would support a jury verdict that the deceased was outside the course of his employment. It was accordingly held that "on the proof before us the matter became a fact issue for the jury." American Gen. Ins. Co. v. Jones, Tex.Sup., 152 Tex. 99, 255 S.W.2d 502.

The deceased workman in *Elledge, supra,* was also a night watchman who was found dead on the premises of his employer. There was testimony indicating that he left his wife the previous night with the intention of going to the employer's place of business to work, and the parties stipulated that he died of an accidental injury while on the employer's premises. The evidence failed to show how the decedent came to be injured or what he was doing at the time. The application for writ of error was refused, no reversible error, with a per curiam opinion stating, among other things, that in our opinion the testimony mentioned above, the stipulation of counsel, and the other circumstances established by the evidence raised an issue of fact as to whether the deceased sustained his accidental injury

in the course of his employment. Great Am. Indem. Co. v. Elledge, Tex.Sup., 159 Tex. 288, 320 S.W.2d 328. We hold that here, as in the two cases just cited, the course of employment finding by the trier of fact is supported by circumstantial evidence despite the proof that would warrant a negative answer to Special Issue No. 3. Although respondent argues to the contrary, it is also our opinion that the jury could reasonably conclude from the circumstances proved that petitioner's injuries were probably accidental.

Respondent's other points of error in the Court of Civil Appeals would, if sustained, lead to a remand of the case for a new trial. Some of them relate to the weight and preponderance of the evidence and are beyond our jurisdiction. The judgment of the Court of Civil Appeals is accordingly reversed, and the cause is remanded to that court for consideration of respondent's Points of Error Nos. 4 to 7, inclusive.