**INTERNATIONAL INSURANCE COMPANY, Appellant,**

v.

**Novilene DEATHERAGE, Appellee.**

**No. 13102.**

Court of Appeals of Texas, Austin.

Feb. 3, 1982.

Beverly Willis, Jerry P. Campbell, Naman, Howell, Smith, Lee & Mildrow, Waco, for appellant.

Randy Wilson, Abilene, for appellee.

SHANNON, Justice.

Appellant International Insurance Company appeals from the judgment entered by the district court of Bell County in favor of appellee Novilene Deatherage, the surviving widow of James Thomas Deatherage, in a worker's compensation case.

The question concerns whether the workman died as a result of injuries received in the course of his employment. The jury answered that he did. This Court held, previously, that there was no evidence supporting the jury's answer, reversed the judgment, and rendered judgment that appellee take nothing. 606 S.W.2d 548 (Tex. Civ.App.1980). The Supreme Court reversed the judgment of this Court and remanded the cause to this Court, holding that there is more than a scintilla of evidence in support of the jury's answer that the workman died as a result of injuries received in the course of employment. 615 S.W.2d 181 (Tex.1981).

On remand to this Court, the insurance company urges that the district court erred in overruling its motion for new trial because the evidence that Deatherage died from injuries received in the course of his employment was factually insufficient to support the jury's answer.

An injury sustained in the course of employment includes "all . . . injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Tex.Rev.Civ.Stat. Ann. art. 8309 § 1(4)(4) (1967).

■ The requirements of the statute are not satisfied by proof that injury occurred while the workman was engaged in or about the furtherance of his employer's affairs or business. He must also show that the injury was of a kind and character that had to do with and originated in the employer's work, trade, business, or profession. *Shelton v. Standard Insurance Co.*, 389 S.W.2d 290 (Tex.1965); *Texas General Indemnity Co. v. Bottom*, 365 S.W.2d 350 (Tex.1963); *Walker v. Texas Employer's Insurance Association*, 443 S.W.2d 429 (Tex. Civ.App.1969, writ ref'd). It was appellee's burden, of course, to prove that her husband's death occurred in the course of employment. *Service Mutual Insurance Co. v. Banke*, 155 S.W.2d 668 (Tex.Civ.App.1941, writ ref'd).

■ Under certain circumstances, worker compensation beneficiaries may be entitled to a presumption of course of employment. *Scott v. Millers Mutual Fire Insurance Co.*, 524 S.W.2d 285 (Tex.1975). However, the Supreme Court in the case at bar held the presumption not applicable since appellee obtained a jury finding that Deatherage died in the course of employment.

In reviewing factual insufficiency points of error, the court of appeals considers all of the evidence. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960). Fragments of Deatherage's skull and other

bones were discovered on March 9, 1978, in the ashes of his house trailer in the "bed area." Deatherage had lived in the trailer which had been parked on the premises of his employer's asphalt plant. Deatherage had been employed by Jagoe Public as a night watchman at the company's plant located in a remote section of western Bell County.

The asphalt plant was located in an abandoned rock quarry. Although there was no evidence his employer required him to live in the trailer house on the premises, his employer was aware he would do so and the employer considered it "good security" for the trailer to be on the premises. Although Deatherage had no duties during the daytime and during daylight hours he was free to leave the plant premises and do anything he pleased, his employer furnished him with a set of keys to the plant and instructed him to give them to any potential purchaser who wished to inspect the plant. He was required to be on duty, however, during the hours of darkness, seven days a week. Deatherage was carried on the company's payroll as a "night watchman" and was paid on the basis of ten hours each day.

As the asphalt plant was not in operation, Deatherage was usually the only person at the plant site. He reported to his employer once a week by telephone. After Deatherage had not called in for some time, his employer requested the Sheriff of Bell County to investigate.

The fire that consumed the trailer and Deatherage was not part of a larger conflagration. In fact, the trailer was the only equipment or structure burned. No one saw the fire. No one was able to testify as to the cause of the fire. There was no evidence proving the time of day, or night, the fire occurred. Indeed, several days must have passed before anyone knew the trailer had burned.

■ To discharge her burden showing her husband died in the course of employment, appellee was required to establish (1) Deatherage was in or about the furtherance of his employer's business at the time of the injury and (2) the injury was of a kind and character having to do with and originating in the employer's work, trade, or business. *Shelton v. Standard Insurance Co., supra.* Without specifying the evidence as to each requirement for course of employment, the Supreme Court held there was more than a scintilla of evidence in support of the jury's answer. From a review of all of the evidence, *In re King's Estate, supra,* this Court is of the opinion the evidence is insufficient to show the second element: that the workman's injury resulting in death was of a kind and character having to do with and originating in the employer's work, trade, or business.

An injury has to do with, and arises out of the work or business of the employer, when it results from a risk or hazard which is necessarily, or ordinarily, or reasonably inherent in or incident to the conduct of such work or business. Compensation law protects the employee against the risk or hazard taken in order to perform the employer's task. *Lumberman's Reciprocal Association v. Behnken,* 246 S.W. 72 (Tex. 1922). In this connection, it may be observed that a night watchman has a duty to protect, as best he can, his employer's property from theft or damage. Evidence that the night watchman was discovered dead at his post having been assaulted during working hours should be sufficient proof of a risk or hazard reasonably inherent in the discharge of his duties. Similarly, evidence that a night watchman perished during working hours in a conflagration of the plant he was employed to protect should also be sufficient to establish a risk reasonably connected with the performance of his duties. The evidence in this case, of course, presents no situation even remotely comparable.

■ In our view, appellee was unable to connect the occurrence, cause, or time of the fire with Deatherage's duties. Appellee adduced no evidence explaining the cause or origin of the fire. The investigator from the sheriff's office found skeletal remains in what was the "bed area" of the trailer. The investigator testified the fire began and ended in the trailer and nothing else

was burned. Such testimony ruled out the chance that the trailer was consumed in a grass fire which burned the area or that the fire spread to the trailer from the employer's equipment the workman was to guard. Even had appellee proved the fire occurred during working hours,[1] there was insufficient evidence to connect the risk of the fire, or its cause, with Deatherage's duties. Under the state of this record, Deatherage simply died "at home," in his trailer house. In conclusion, there was an insufficient showing that the fire was a risk reasonably incidental to the work required of Deatherage. Accordingly, the jury's answer that Deatherage perished as a result of injuries received in the course of his employment is supported by insufficient evidence. *In re King's Estate, supra.*

The judgment is reversed and the cause is remanded to the district court.

PHILLIPS, Chief Justice, dissenting.

I respectfully dissent and would hold that appellee has shown herself to be entitled, on remand, to benefit from the presumption set out in *Scott v. Millers Mutual Fire Insurance Co.,* 524 S.W.2d 285 (Tex.1975):

> When an employee is found dead at a place where his duties require him to be, or where he might properly have been in the performance of his duties, during the hours of his work, it has been said that in the absence of evidence that he was not engaged in his master's business, there is presumption that the accident arose out of and in the course of the employment within the meaning of the compensation statute.

524 S.W.2d at 288. *See also, Elledge v. Great American Indemnity Co.,* 312 S.W.2d 722 (Tex.Civ.App.—Houston 1958), *writ ref'd n. r. e. per curiam,* 159 Tex. 288, 320 S.W.2d 328 (1958); *American General Insurance Co. v. Jones,* 250 S.W.2d 663 (Tex. Civ.App.—Galveston 1952), *rev'd on other grounds,* 152 Tex. 99, 255 S.W.2d 502 (1953); *Associated Employers Lloyds v. Wiggins,* 208 S.W.2d 705 (Tex.Civ.App.—Fort Worth 1948, writ ref'd n. r. e.).

The Supreme Court, when it decided this case, did hold the presumption was not needed on this appeal, 615 S.W.2d at 183, because appellee has already obtained a positive jury finding on course and scope. On remand, this will not be so.

In early 1978, Tom Deatherage was employed by Jagoe Public Company as a night watchman. He was obligated to watch an inactive asphalt plant located in an isolated, abandoned rock quarry a few miles from the small town of Nolanville. Deatherage was required to watch the plant during the hours of darkness, seven nights a week. He was not required to be at any particular place on the premises while on duty. It would be fair to say his duties required him to spend a great deal of time in an isolated area, far from law enforcement and fire protection.

Deatherage was also asked to perform limited duties during the day. He was given a set of keys and told to give them to potential purchasers who wanted to inspect the plant. Beyond this duty, Deatherage was free to do what he wanted during the day. Though not required to, Deatherage chose to live on the site in his own trailer. Jagoe Public approved of this arrangement

1. Appellee insists there was indirect evidence proving Deatherage died during the night hours of February 15, 1978. The basis for appellee's claim is the testimony of Linda Moore, dispatcher for the Nolanville Police Department. An unidentified person called the Nolanville Police Department by "CB" radio about 8:01 p.m. on February 15, 1978, to report a fire near "439 and Quarry Road." Mrs. Moore reported the "CB" call to the fire department. Upon their return to Nolanville, the firefighters reported to Mrs. Moore that they found no fire. Mrs. Moore testified she, of course, could not state whether or not there had been a fire.

Mrs. Moore's testimony was probative only of the fact she received a report of a fire, and, thereafter, she received a report from the firefighters that they found no fire. Her testimony was proof she received the reports, but was not proof of the truth of the matter asserted in the reports. 1 Ray, Texas Law of Evidence § 781 (1980). The content of the reports was hearsay and without probative value whether objected to or not. *Aetna Insurance Company v. Klein,* 160 Tex. 61, 325 S.W.2d 376 (1959). In short, appellee failed to prove by Mrs. Moore that the fire did, or did not, destroy the trailer during the hours of darkness on February 15, 1978.

and received a benefit from it. Its president testified, "During the daylight hours, of course, his trailer was right on the site, and even the presence of the trailer there, whether no one was there or not, it's good security."

The jury concluded Deatherage died on February 15, 1978. Their conclusion was based on circumstantial evidence. Deatherage bought butane for the trailer with a check dated February 14. On the evening of February 15, a CB call from an unidentified motorist reported a suspected brush fire near the rock quarry to the Bell County Sheriff's office. The sheriff's dispatcher so testified. As the majority correctly concludes, such testimony is hearsay as to the *existence* of a fire, but is fully competent evidence of a fire being *reported*. Logically, the *report* makes the *existence* somewhat more likely and is some evidence that Tom Deatherage died by fire on the evening of February 15, 1978.

Jagoe Public paid Deatherage by checks mailed weekly to the Post Office in Harker Heights. The check postmarked February 15 was never picked up, nor were several sent after that date and before Deatherage's death was discovered.

In early March, the company realized Deatherage had not been heard from for awhile; the Bell County Sheriff was contacted and fragments of Deatherage's bones were found in the bed area of his burned up trailer by a Sheriff's office investigator.

In considering the facts of this case, the Supreme Court stated,

> The evidence establishes that Deatherage was found dead at a place where his duties required him to be or where he might properly have been in the performance of his duties. However, the court of civil appeals concluded that Mrs. Deatherage could not recover because she failed to prove Deatherage died 'during the hours of his work.' This conclusion erroneously restricts Deatherage's employment to specific duties and fixed hours of work. As heretofore pointed out, the nature of his duties and the remote place of

their performance made his duties and hours very broad ... the jury could reasonably infer that he was performing security duty for his employer at all times that he was on the premises. Clearly, his presence served this purpose for his employer. 615 S.W.2d at 183.

I agree with this analysis and believe it mandates an instruction to the trial court that appellee be afforded the benefit of the *Scott* presumption on remand.

Because I believe this case presents the classic example of when the *Scott* presumption should be used, I dissent from the majority's failure to so conclude.